IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PREVMED, INC., et al., §
§
Plaintiffs, §
§  Civil Action No. 3:14-CV-3960-D
VS. §
§
MNM-1997, INC. d/b/a as ORAQUEST §
DENTAL PLANS, et al., §
§
Defendants. §

MEMORANDUM OPINION
AND ORDER

In this action arising from the termination of a contract for the provision of dental

services to patients at skilled nursing facilities ("SNFs"), defendants move under Fed. R. Civ.

P. 12(b)(6) to dismiss plaintiffs' claims against two defendants alleging violations of the

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and

against all defendants alleging violations of Tex. Ins. Code Ann. § 541.151 (West 2009). For

the following reasons, the court grants the motion.

I

Plaintiff Mid America Professional Group, P.C. ("MAPG") is a clinician-owned

professional group that employs dentists and dental hygienists to provide dental services to

patients at SNFs.[1]  Plaintiff PrevMED, Inc. ("PrevMED") markets and sells MAPG's dental

_____

[1]In deciding defendants' 12(b)(6) motion, the court construes the amended complaint
in the light most favorable to plaintiffs, accepts as true all well-pleaded factual allegations,
and draws all reasonable inferences in plaintiffs' favor.  *See, e.g., Lovick v. Ritemoney Ltd.*,
378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited

services to SNFs and their residents.  Plaintiff Mid America Health, Inc. ("MAH") provides

dental practice management services for MAPG.  PrevMED, MAPG, and MAH market

themselves to SNFs under the "PrevMED" brand.

In March 2011 PrevMED entered into a contract ("Contract") with defendant MNM-

1997, Inc. d/b/a OraQuest Dental Plans ("OraQuest"), a registered health maintenance

organization ("HMO").  Under the Contract, OraQuest agreed to be the underwriting insurer

for insurance policies issued to SNF residents that covered the on-site dental health services

provided by PrevMED.  Plaintiffs allege that PrevMED

> is not a licensed insurer and does not issue the Policy.  Rather,
> the Policy is underwritten by an insurer.  SNF patients who wish
> to purchase the Policy enter into a contract with the insurer.
> According to that contract, the insurer receives premiums from
> SNF patients, a portion of which is distributed to PrevMED for
> the treatment of the patients.  The patients then are treated by
> MAPG clinicians and have those services covered by their
> policies.

Am. Compl. ¶ 15.  From April 2011 until September 30, 2014 MAPG and its clinicians were

providers in OraQuest's HMO network.

PrevMED and OraQuest operated under the Contract for over three years, during

which OraQuest paid PrevMED for its services according to the compensation schedule

included in the Contract.  On September 29, 2014, however, defendant James Amos Taylor

("Taylor"), President of defendant First Continental Life & Accident Insurance Co. d/b/a/

---

to the complaint, any documents attached to the complaint, and any documents attached to
the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone
Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

FCL Dental ("FCL") and CEO of OraQuest, informed PrevMED that, as of October 1, 2014, OraQuest would no longer pay for services that MAPG rendered.  Plaintiffs contend that, by terminating the Contract without sufficient notice,[2] OraQuest effectively cut PrevMED from the Texas market, at least temporarily, because PrevMED could not immediately negotiate inclusion in another HMO network.  They allege that, without OraQuest's payments, PrevMED's only source of compensation for services was directly from SNF patients, who would be required to pay out-of-pocket.  Because PrevMED could not afford to provide services without compensation on a prolonged basis, it was forced to cease all Texas operations on October 1, 2014.

Plaintiffs allege that in the months preceding the termination of the Contract, defendants embarked on a "carefully orchestrated coup," with the aim of "cut[ting] out the middleman" and taking over PrevMED's business.  *Id.* at 1.  According to the amended complaint, to achieve this, OraQuest approached several PrevMED clinicians and urged them to violate their contractual obligations to PrevMED by providing dental services to PrevMED-contracted SNFs as part of a new OraQuest provider team.[3]  OraQuest, Taylor, and defendant Seung Yop "Paul" Kwauk ("Kwauk")[4] also contacted PrevMED employees and falsely represented that the termination of OraQuest's affiliation with PrevMED did not

[2]The Contract requires advance notice before termination by either party.

[3]MPAG clinicians agree in writing not to compete with PrevMED by independently providing dental services as PrevMED-contracted SNFs during their employment and for one year following the termination of employment.

[4]Kwauk is the COO of defendant FCL and a member of OraQuest's board of directors.

affect PrevMED employees' provision of services, directing dentists and hygienists to continue with their regularly-scheduled visits.  OraQuest made false statements to SNFs claiming continued affiliation with PrevMED and causing SNFs to believe that OraQuest had "bought out PrevMED" and that OraQuest would be "using the same service providers." *Id.* ¶ 35.  Finally, under false pretenses, OraQuest requested PrevMED's marketing and scheduling materials and a list of facilities served by PrevMED providers so that it could pass itself off as PrevMED or an affiliate, mimic the PrevMED services, send OraQuest providers to PrevMED appointments, and usurp PrevMED's role in their existing business relationship.[5]  Plaintiffs allege, *inter alia*, that OraQuest's actions have significantly harmed PrevMED's reputation in the Texas market.

Plaintiffs assert that on a different occasion, OraQuest similarly used false pretenses to usurp the business of a contractual counter party.  From April 2011 until September 2013, Group Benefit Services, Inc. ("GBS") served as OraQuest's third-party administrator.  Shortly before terminating its relationship with GBS, OraQuest conducted an "audit" of GBS's records, requesting via emails on May 2, 2013 and May 3, 2013 a list of all members since inception of the policy, a list of all nursing home facilities, monthly disbursement schedules since inception, copies of all monthly bank statements, sample documents submitted to the processing center and various other categories of information.  Once

---

[5]Plaintiffs allege that FCL officers Taylor and Kwauk were key instigators of the alleged misrepresentations, and that many of the acts and misrepresentations alleged were made by FCL employees from their FCL email accounts.

OraQuest obtained this information—which was necessary for OraQuest to take over GBS's third-party administrator role—OraQuest terminated its third-party administrator arrangement with GBS.

Plaintiffs filed this lawsuit against OraQuest, FCL, Taylor, and Kwauk alleging claims under federal and state law. One of their federal-law claims is asserted under RICO against Kwauk and Taylor. One of their state-law claims is brought against all defendants under § 541 of the Texas Insurance Code. Defendants move under Rule 12(b)(6) to dismiss these two claims. Plaintiffs oppose the motion.

## II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive this motion to dismiss, plaintiffs must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level [.]"). "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III

The court turns first to defendants' motion to dismiss plaintiffs' civil RICO claim against Kwauk and Taylor.

## A

RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]"  18 U.S.C. § 1962(c).  "'Reduced to their simplest terms, the essential elements of a RICO claim are: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'"  *Orthoflex, Inc. v. ThermoTek, Inc.*, 2012 WL 2864510, at *2 (N.D. Tex. July 12, 2012) (Fitzwater, C.J.) (quoting *Larrew v. Barnes*, 2002 WL 32130462, at *1 n.1 (N.D. Tex. Aug. 27, 2002) (Kaplan, J.), *rec. adopted*, 2002 WL 32130462 (N.D.

Tex. Sept. 17, 2002) (Fitzwater, J.)).

"Section 1961(1)(B) defines 'racketeering activity' according to whether it constitutes 'any act which is indictable' under several specified sections of title 18 of the United States Code, [two] of which [are] mail fraud [and wire fraud]." *TruGreen Landcare, LLC v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citations omitted). "To establish a pattern of racketeering activity, [plaintiffs] must allege (1) the predicate acts of racketeering activity, and (2) a pattern of such acts." *Orthoflex, Inc.*, 2012 WL 2864510, at * 2 (citing *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993)). A pattern of racketeering activity includes two or more acts of racketeering activity. *See* 18 U.S.C. § 1961(5). "[A] 'pattern' requires both that the acts are 'related' to each other and that they have 'continuity.'" *Burzynski*, 989 F.2d at 742. "It is this factor of *continuity plus relationship* which combines to produce a pattern." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (citation omitted). Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. Continuity requires that the related acts "constitute or threaten long-term criminal activity." *Burzynski*, 989 F.2d at 742 (citing *H.J. Inc.*, 492 U.S. at 239). Continuity can be proved by "a closed period of repeated conduct, or. . . past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. "A closed period of conduct may be demonstrated 'by proving a series of related predicates extending over a substantial period of time,'" while "[a]n open period of conduct involves the establishment of 'a threat of continued racketeering

- 7 -

activity.'" *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (citing *H.J. Inc.*, 492 U.S. at 242).

B

Defendants contend that plaintiffs have failed to plead a plausible civil RICO claim because they have not alleged a pattern of racketeering activity.  They maintain that the only alleged predicate acts concerning *PrevMED* occurred between July 16, 2014 and October 2, 2014—a 2½ month period—and that plaintiffs cannot establish a continuing threat of criminal activity based on select communications that occurred over a couple of months. Defendants posit that all of the alleged representations were made as part of an otherwise lawful business arrangement that has since been terminated.  Regarding plaintiffs' allegations concerning representations made to GBS in emails sent in May 2013, defendants contend that any actionable misrepresentations made to GBS "would necessarily be 'part and parcel' with the alleged scheme to take over PrevMED's business."  D. Br. 9 (quoting *Paul v. Aviva Life & Annuity Co.*, 2011 WL 2713649, at *6 (N.D. Tex. July 12, 2011) (Boyle, J.)).  According to defendants, this is because GBS was not a stranger to the relationship between PrevMED and OraQuest—as the third-party administrator of the OraQuest policies, GBS was the link between them—and severing that relationship through fraud would therefore be part of (not independent from) the same alleged scheme to cut out PrevMED. And in any event, defendants maintain, the relationships with *both* GBS and PrevMED have terminated, eliminating the potential threat of any long-term criminal activity.

Plaintiffs respond that they have alleged numerous predicate acts involving two

schemes—the GBS "takeover" in May 2013 and the PrevMED "takeover" in October 2014—and misrepresentations to multiple victims, including PrevMED, GBS, SNFs, SNF patients, and dentists.  Plaintiffs contend that the allegations of the first amended complaint "support a reasonable inference that predicate acts are business as usual" for defendants, and that, as in *Abraham v. Singh*, 480 F.3d 351 (5th Cir. 2007), "'there is no reason to suppose that this systematic victimization . . . would not have continued indefinitely had the Plaintiffs not filed this lawsuit.'"  P. Br. 8 (quoting *Abraham*, 480 F.3d at 356).  In other words, plaintiffs maintain that because they allege participation in two related schemes, and that one scheme had a large number of victims and predicate acts, they have adequately pleaded a pattern of racketeering activity under both closed- and open-ended continuity.

## C

The court concludes that the amended complaint fails to state a plausible civil RICO claim against Kwauk and Taylor because it does not adequately plead a pattern of racketeering activity.

"Continuity cannot be established by multiple acts of fraud that are part of a single transaction."  *Orthoflex, Inc.*, 2012 WL 2864510, at *3 (citing *Word of Faith*, 90 F.3d at 123); *Burzynski*, 989 F.2d at 734 ("*All* of the alleged predicate acts took place as part of the *Burzynski I* litigation, which has ended. . . .  The conduct did not constitute or threaten long-term criminal activity."); *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1464 (5th Cir. 1991) ("there is no threat here of continued criminal acts.  [Defendant's] acts which were alleged to have deprived [plaintiff] of a property interest were, when completed,

- 9 -

without threat of repetition."); *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 244 (5th Cir. 1988) ("Delta has alleged as a pattern of racketeering activity nothing more than numerous predicate acts which were necessary segments of an otherwise legitimate [merger]."). When this is the case, "[t]he conduct d[oes] not constitute or threaten long-term criminal activity." *Burzynski*, 989 F.2d at 743; *see also Calcasieu*, 943 F.2d at 1464 ("Short-term criminal conduct is not the concern of RICO.").

The alleged predicate acts involving *PrevMED* consist of communications by OraQuest to various individuals and entities—including employees of MAH, PrevMED clinicians, employees, and executives, and SNFs—that occurred between July 16, 2014 and October 11, 2014. OraQuest terminated its contract with PrevMED on September 29, 2014, and PrevMED no longer does business with OraQuest. Thus the allegations that the first amended complaint makes concerning PrevMED are similar to those determined to be insufficient in *Orthoflex*, *Burzynski*, and *Word of Faith* in that the alleged predicate acts were part of an otherwise lawful transaction or contractual relationship that has since ended. *See, e.g., Orthoflex, Inc.*, 2012 WL 2864510, at *3 (holding that plaintiff failed to plead continuity of racketeering activity where allegedly fraudulent communications occurred over span of two years and in course of distribution agreement that had since terminated). Because the predicate acts all occurred within the span of 2½ months, the Contract has been terminated, and the amended complaint does not allege that any fraudulent act occurred after October 11, 2014, plaintiffs have failed to adequately plead conduct directed at PrevMED that constitutes or threatens long-term criminal activity.

Unlike the plaintiffs in *Orthoflex*, *Burzynski*, and *Word of Faith*, however, plaintiffs here have plausibly alleged that, during the previous year, OraQuest engaged in a separate criminal scheme to defraud a different company.  In support of their RICO claim, plaintiffs allege:

> On May 2 and May 3, 2013, the OraQuest RICO Persons caused Kwauk, Taylor and [Andrea] Suarez to transmit false statements on behalf of the OraQuest RICO Enterprise via telephone and the internet to GBS employees including K.S. representing that the OraQuest RICO enterprise intended to perform a compliance audit and denying its true intention to terminate GBS and take over GBS's role as a third-party administrator. . . .  Use of the internet, mails, and telephonic systems between OraQuest and K.S. crossed interstate lines and therefore constitute "interstate" commerce.

Am. Compl. ¶ 118.  Plaintiffs contend that because the PrevMED takeover and the GBS takeover transactions were separate and distinct, defendants cannot show that the GBS takeover is part of a single transaction with the PrevMED takeover.  Even though the court agrees with plaintiffs' position,[6] it still concludes that plaintiffs' allegation that, one year

---

[6]Defendants argue that

> any actionable misrepresentations made to GBS would . . . necessarily be "part and parcel" with the alleged scheme to take over PrevMED's business.  GBS was not a stranger to the relationship between PrevMED and OraQuest; as the third-party administrator of the OraQuest policies, GBS was the link between them.  Severing that relationship through fraud would thus be part of (not independent from) the same alleged scheme to cut out PrevMED.

D. Br. 9-10 (citations omitted).  But defendants do not explain how GBS's role as a third party administrator makes OraQuest's actions with respect to GBS "part and parcel" of the

- 11 -

prior to the PrevMED takeover, OraQuest committed mail and wire fraud in connection with its takeover of another company is insufficient to plausibly allege RICO continuity.

There is no suggestion in the amended complaint that OraQuest intends to or has taken steps to take over another company through the use of mail and wire fraud. And plaintiffs have not otherwise alleged, other than in conclusory terms, that there is a threat that OraQuest will engage in future criminal conduct. Moreover, OraQuest's relationships with PrevMED and GBS have ended, thus eliminating the potential threat of any long-term criminal activity involving either of these entities. Plaintiffs' RICO claim is thus based entirely on a closed period of conduct consisting of two isolated transactions that occurred over a period of approximately 17 months. To show closed-ended continuity, a plaintiff may prove "a series of related predicates extending over a substantial period of time." *H.J. Inc.*, 492 U.S. at 242. In *H.J., Inc.* the Supreme Court explained that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id*. Although OraQuest's alleged criminal conduct spans a period of greater than 17 months, more than 14 months elapsed between OraQuest's predicate acts of mail and wire fraud with respect to GBS and the predicate acts of mail and wire fraud with respect to PrevMED, during which no criminal activity is alleged to have occurred. The predicate acts were part of two single, otherwise lawful transactions that have ended. And although OraQuest is

_____

scheme to take over PrevMED's business. As plaintiffs point out, the GBS takeover was not dependent on the PrevMED takeover, and either could have occurred without the other.

alleged to have made misrepresentations to several individuals and companies, the amended complaint alleges "takeover" schemes that were directed at only two victims—PrevMED and GBS.[7]  The court therefore concludes that the amended complaint fails to allege the type of long-term criminal activity that RICO is intended to address.  Accordingly, the court grants defendants' motion to dismiss plaintiffs' civil RICO claim against Kwauk and Taylor.

## IV

The court turns next to defendants' motion to dismiss plaintiffs' claim under § 541 of the Texas Insurance Code.

## A

Section 541.151 provides a private right of action for any "person" who has sustained actual damages caused by another person's engaging in a specified unfair or deceptive act or practice.[8]  Defendants maintain that plaintiffs lack standing[9] to assert a claim under

---

[7]Plaintiffs allege that, like the *Abraham* plaintiffs, they have "alleged numerous distinct victims of Defendants' deception: PrevMED, GBS, SNFs, SNF patients, and dentists." P. Br. 12.  But *Abraham* is factually distinguishable.  There the plaintiffs sufficiently pleaded "continuity of racketeering activity or its threat" by alleging that defendants engaged in at least a two-year scheme involving repeated international travel to convince up to 200 or more Indian citizens to borrow thousands of dollars to travel to the United States, only to find that circumstances were not as promised, and the court concluded that "there [was] no reason to suppose that this systematic victimization allegedly begun in November 2000 would not have continued indefinitely had the Plaintiffs not filed this lawsuit."  *Abraham*, 480 F.3d at 356.

[8]Tex. Ins. Code Ann. § 541.151 provides:

A person who sustains actual damages may bring an action against another person for those damages caused by the other person engaging in an act or practice:

- 13 -

§ 541.151 because they (1) are not "persons," as defined by § 541.002, who are engaged in the business of insurance, (2) are not in privity of contract with an insurer on an insurance policy, and (3) did not rely on misrepresentations of insurance coverage that violate § 17.46(b) of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2011).

The term "person" is defined in the Texas Insurance Code as "an individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyd's plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, adjuster, or life and health insurance counselor." *Id.* § 541.002. "Despite this broad statutory language which seems to give standing to 'any person,' . . . Texas courts have severely limited standing to sue under [§ 541.151 (formerly Tex. Ins. Code Ann. Art. 21.21, § 16(a))]." *Burzynski*, 989 F.2d at 740. Under Texas law, "absent privity of contract

------

> (1) defined by Subchapter B to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance; or (2) specifically enumerated in Section 17.46(b), Business & Commerce Code, as an unlawful deceptive trade practice if the person bringing the action shows that the person relied on the act or practice to the person's detriment.

[9]The court notes that although *Burzynski*, 989 F.2d at 740, and other cases cited in this memorandum opinion and order refer to "standing," they are using the term somewhat loosely to address a party's substantive right (or eligibility) to recover under a specific statute, not to decide whether the elements of constitutional or prudential standing—which are standing requirements that are more typically addressed by federal courts—have been satisfied.

or some sort of reliance by the person bringing a claim on the words or deeds of the insurer, a suit will not lie under [§ 541.151]." *Id.* at 741 (quoting *Warfield v. Fid. & Deposit Co.*, 904 F.2d 322, 327 (5th Cir. 1990)) (internal quotation marks omitted).  "Although the language of [§ 541.151] provides a cause of action to 'any person,' the right to sue under [§ 541.151] has been limited by Texas courts to persons in privity of contract with the insurer on an insurance policy or an intended beneficiary of an insurance policy."  *Tex. Med. Ass'n v. Aetna Life Ins. Co.*, 80 F.3d 153, 159 (5th Cir. 1996) (citing cases) (referring to former § 16(a)); *cf. Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 383 (Tex. App. 2010, pet. denied) (holding that although plaintiff was neither party nor third party beneficiary to insurance policy, plaintiff "bases its claims upon false and misleading representations . . . made to it by the insurer's agent for its use in business relations. . . [and plaintiff] thus falls squarely within the scope of persons entitled to sue for damages under the plain language of former article 21.21, section 16(a).").[10]

## B

Plaintiffs contend, *inter alia*, that they have standing to sue under § 541 because

---

[10]In their response, plaintiffs cite *Crown Life Insurance Co. v. Casteel*, 22 S.W.3d 378, 383-84 (Tex. 2000), in which the Supreme Court of Texas held that an insurance agent who was damaged by an insurance company's practices that violated § 541.151 had standing to sue the company.  But *Casteel* is factually distinguishable.  Setting to one side the fact that plaintiffs are not insurance agents, the plaintiff in *Casteel* alleged that he had relied on information provided to him by the insurance company about how the policies worked. *Casteel*, 22 S.W.3d at 381.  As the court explains below, in the present case, plaintiffs do not contend that they relied on OraQuest's alleged misrepresentations.

defendants engaged in deceptive practices[11] toward SNFs and SNF patients that constituted

unfair methods of competition, and that these actions harmed plaintiffs by diluting the value

of the PrevMED and Mid America brands, damaging plaintiffs' reputation, and undermining

plaintiffs' current and potential contracts with SNFs and SNF patients.  Plaintiffs allege that

defendants made repeated misrepresentations to SNFs and SNF patients "regarding whose

services would be covered by the insurance policy," and that "[t]he identity of the dentists

whose services are covered by an insurance policy is a policy term or benefit that is

important to patients because they care who provides them with medical or dental services."

P. Br. 16.[12]

---

[11]Plaintiffs contend that defendants violated Tex. Ins. Code Ann. § 541.051, which
prohibits, *inter alia*, the making of misrepresentations about the benefits and advantages
promised by a policy; § 541.052, which prohibits, *inter alia*, "untrue, deceptive, or
misleading" representations "through the Internet" "regarding the business of insurance"; and
§ 541.061, which prohibits, *inter alia*, misrepresenting an insurance policy by "making an
untrue statement of material fact" or "failing to state a material fact necessary to make other
statements made not misleading, considering the circumstances under which the statements
were made."  Although plaintiffs also rely in their amended complaint on alleged violations
of Tex. Ins. Code Ann. §§ 541.059(a) and 843, they do not address these provisions in their
response.  The court therefore assumes that plaintiffs do not intend to base their § 541 claim
on alleged violations of these provisions.

[12]Plaintiffs also argue that they are "persons" "engaged in the business of insurance,"
and thus have standing to sue under Tex. Ins. Code Ann. § 541.151, because they worked
hand-in-hand with defendants in developing the insurance policy and

> agreed to assist in developing an appropriate individual health
> plan policy, to make necessary introductions to a broker and
> third party administrator, to contract with those insurance
> entities, to arrange with [SNFs] for the sale of the PREVMED
> Policy to residents, and to contract for the provision of services
> covered by the PREVMED Policy.

- 16 -

The court holds that plaintiffs have failed to plead a plausible basis to sue under § 541.151.  It appears that plaintiffs are attempting in their amended complaint to establish standing based on the reliance alternative rather than on privity of contract alternative.  But they fail to plead that *they*—as opposed to *SNFs or SNF patients*—relied on any misrepresentation that OraQuest made.  For example, the amended complaint alleges that "the OraQuest termination announcement letter was intended to and did in fact *mislead SNFs* in material respects *causing them to believe* that OraQuest 'bought out PrevMed' and that OraQuest would be 'using the same service providers.'"  Am. Compl. ¶ 35 (emphasis added).  Plaintiffs also assert that an OraQuest sales representative "falsely asserted in her statement [to "G.L."] that OraQuest would not change the services from those provided by PrevMED."  *Id.* at ¶ 40.  The amended complaint does not allege a plausible basis for the court to infer "some sort of reliance" by plaintiffs.  *See Parra v. Markel Int'l Ins. Co.*, 300 Fed. Appx. 317, 318 (5th Cir. 2008) (per curiam) ("Texas law does not permit a person to recover under [§ 541.151] unless there is a direct and close relationship between wrongdoer and claimant. In other words, the plaintiff must establish either privity with the insurer or some sort of reliance on actions of the insurer."); *Burzynski*, 989 F.2d at 741 (holding that district court

---

P. Br. 20 (brackets, citations, and internal quotation marks omitted). Additionally, PrevMED was paid a fixed amount per policy and served as the point of contact between OraQuest and the SNFs, providing the vast majority of the referrals and services covered under the policy. But under Texas law, it is not enough to be a person "engaged in the business of insurance." As the court explains, plaintiffs must comply with other requirements for standing—privity of contract or some sort of reliance on the words or deeds of the insurer—that they have failed to satisfy.

- 17 -

did not err in dismissing doctor's Insurance Code claim where doctor "[could not] argue that he himself relied on the false representations"); *Levinthal v. Kelsey Seybold Clinic, P.A.*, 1997 WL 282263, at *3 (Tex. App. 1997, no writ) (unpublished opinion) (holding that doctor lacked standing to sue under Insurance Code where he was not an insured, intended beneficiary, or person who detrimentally relied on insurer's representations).  The court therefore concludes that plaintiffs lack standing to bring a claim under Tex. Ins. Code Ann. § 541, and it dismisses this claim.

*     *     *

For the foregoing reasons, the court grants defendants' motion to dismiss plaintiffs' civil RICO claim and plaintiffs' claim for violation of § 541 of the Texas Insurance Code.

**SO ORDERED**.

July 10, 2015.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE