United States District Court
Southern District of Texas

**ENTERED**

July 08, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PREVMED, INC.,<br>MID-AMERICA HEALTH, INC.,<br>and MID-AMERICA PROFESSIONAL<br>GROUP, P.C.,<br><br>Plaintiffs,<br><br>v.<br><br>MNM-1997, INC. d/b/A<br>ORAQUEST DENTAL PLANS,<br>FIRST CONTINENTAL LIFE &<br>ACCIDENT INSURANCE CO.,<br>d/b/a FCL DENTAL,<br>JAMES AMOS TAYLOR, and<br>SEUNG YOP "PAUL" KWAUK,<br><br>Defendants. | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. H-15-2856 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, PrevMED, Inc. ("PrevMED"), Mid-America Health, Inc. ("MAH"), and Mid-America Professional Group, P.C. ("MAPG"), have brought suit against defendants, MNM-1997, Inc., d/b/a Oraquest Dental Plans ("OraQuest"), First Continental Life & Accident Insurance Co., d/b/a FCL Dental ("FCL"), James Amos Taylor ("Taylor"), and Seung Yop "Paul" Kwauk ("Kwauk"), arising from termination of a contract for the provision of dental services to patients at skilled nursing facilities ("SNFs"). Pending before the court is Defendant First Continental Life Accident Insurance Co.'s Amended and Supplemental Motion for Leave to File Original Counterclaim and Amend Scheduling Order (Docket Entry No. 64). For the reasons explained below, the defendants' motion to amend their

pleadings to add original counterclaims will be denied, but because plaintiffs agree to extend by sixty (60) days the deadlines for completing discovery and filing dispositive motions, the existing scheduling orders will be amended accordingly.

## I.  Factual and Procedural Background

### A.  Factual Background

Plaintiff MAPG is a clinician-owned professional group that employs dentists and dental hygienists to provide dental services to patients at SNFs.  Plaintiff PrevMED markets and sells MAPG's dental services to SNFs and their residents.  Plaintiff MAH provides dental practice management services for MAPG.  PrevMED, MAPG, and MAH market themselves to SNFs under the PrevMED brand.

In March 2011 PrevMED entered into a contract ("Contract") with defendant Oraquest, a registered health maintenance organization ("HMO").  Under the Contract, Oraquest agreed to be the underwriting insurer for insurance policies issued to SNF residents that covered the on-site dental health services provided by PrevMED.  Plaintiffs allege that

> PrevMED is not a licensed insurer and does not issue the
> Policy.  Rather, the Policy is underwritten by an
> insurer.  SNF patients who wish to purchase the Policy
> enter into a contract with the insurer.  According to
> that contract, the insurer receives premiums from SNF
> patients, a portion of which is distributed to PrevMED
> for the treatment of the patients.  The patients then are

treated by MAPG clinicians and have those services covered by their policies.[1]

From April 2011 until September 30, 2014, MAPG and its clinicians were providers in OraQuest's HMA network, enabling PrevMED to receive reimbursement for services rendered.[2]

Plaintiffs allege that PrevMED and OraQuest operated under the Contract for over three years, during which OraQuest paid PrevMED for its services according to the compensation schedule included in the Contract.  On September 29, 2014, however, defendant Taylor, President of defendant FCL and CEO of OraQuest, informed PrevMED that, as of October 1, 2014, OraQuest would no longer pay for serves that MAPG rendered.  Plaintiffs allege that, by terminating the Contract without sufficient notice, OraQuest effectively cut PrevMED from the Texas market, at least temporarily, because PrevMED could not immediately negotiate inclusion in another HMO network.  Plaintiffs allege that without OraQuest's payments, PrevMED's only source of compensation for services was directly from SNF patients, who would be required to pay out-of-pocket. Because PrevMED could not afford to provide services without compensation on a prolonged basis, it was forced to cease all Texas operations on October 1, 2014.

---

[1]Plaintiffs' Amended Complaint, Docket Entry No. 14, p. 7 ¶ 15.

[2]Id. at 7-8 ¶ 16.

Plaintiffs allege that in the months preceding the termination of the Contract defendants embarked on a "carefully orchestrated coup," with the aim of "cut[ting] out the middleman" and taking over PrevMED's business.[3]  According to the amended complaint, to achieve this, OraQuest approached several PrevMED clinicians and urged them to violate their contractual obligations to PrevMED by providing dental services to PrevMED-contracted SNFs as part of a new OraQuest provider team.  Plaintiffs allege that OraQuest, Taylor, and defendant Kwauk, Chief Operating Officer of FCL and member of OraQuest's board of directors,[4] contacted PrevMED employees and falsely represented that the termination of OraQuest's affiliation with PrevMED did not affect PrevMED employees' provision of services, and that dentists and hygienists should continue with their regularly-scheduled visits.  Plaintiffs allege that Ora Quest also made false statements to SNFs claiming continued affiliation with PrevMED and causing SNFs to believe that OraQuest had "bought out PrevMED" and that OraQuest would be "using the same service providers."[5]  Plaintiffs allege that OraQuest requested PrevMED's marketing and scheduling materials and a list a facilities served by PrevMED providers so that it could pass itself off as PrevMED or an affiliate, mimic the PrevMED services,

---

[3]Id. at p. 2.

[4]Id. at 4 ¶ 7.

[5]Id. at 17 ¶ 35.

send OraQuest providers to PrevMED appointments, and usurp
PrevMED's role in their existing business relationship. Plaintiffs
allege that FCL officers Taylor and Kwauk were key instigators of
the alleged misrepresentations, and that many of the acts and
misrepresentations alleged were made by FCL employees from their
FCL email accounts.[6]

Plaintiffs allege that on a different occasion, OraQuest
similarly used false pretenses to usurp the business of a
contractual counterparty: Group Benefit Services, Inc. ("GBS").
Plaintiffs allege that from April 2011 until September 2013, GBS
served as OraQuest's third-party administrator.  Shortly before
terminating its relationship with GBS, OraQuest conducted an
"audit" of GBS's records, requesting via emails sent on May 2,
2013, and May 3, 2013, a list of all members since inception of the
policy, a list of all nursing home facilities, monthly disbursement
schedules since inception, copies of all monthly bank statements,
sample documents submitted to the processing center and various
other categories of information.  Once OraQuest obtained this
information — which was necessary for Ora Quest to take over GBS's
third-party administrator role — OraQuest terminated its third-
party administrator arrangement with GBS.[7]

---

[6]Id. at 20-23 ¶¶ 42-44.

[7]Id. at 23-25 ¶¶ 45-47.

## B.    Procedural Background

On November 7, 2014, plaintiffs filed suit in the Dallas Division of the Northern District of Texas against OraQuest for breach of contract, and against all the defendants for violation of the Lanham Act, 15 U.S.C. § 1125, violation the Racketeer-Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), aiding and abetting breach of fiduciary duty, tortious interference with existing and prospective contractual relations, "passing off," misappropriation, civil conspiracy, and unjust enrichment (Docket Entry No. 1).

On December 19, 2014, defendants filed Defendants' Unopposed Motion to Extend Time to Respond to Plaintiffs' Complaint (Docket Entry No. 8).  On the same day, the court entered an Order Granting Defendants' Unopposed Motion to Extend Time to Respond to Plaintiffs' Complaint that extended the response date to January 30, 2015 (Docket Entry No. 9).

On January 30, 2015, defendants filed Defendants' Rule 12(b)(6) Motion to Dismiss (Docket Entry No. 10).

On February 20, 2015, plaintiffs filed Plaintiffs' First Amended Complaint (Docket Entry No. 14), adding a cause of action against all the defendants for violation of the Texas Insurance Code § 541, reasserting RICO claims against Taylor and Kwauk, and reasserting all the other causes of action alleged in their original complaint (Docket Entry No. 14).

-6-

On March 12, 2015, defendants filed Defendants' Unopposed Motion to Extend Time to Respond to Plaintiffs' First Amended Complaint (Docket Entry No. 17), in which defendants urged the court to deem as timely filed a motion to dismiss attached thereto. The same day the court entered an Order denying without prejudice, defendants' initial January 30, 2015, motion to dismiss (Docket Entry No. 18), and an Order Granting Defendants' Unopposed Motion to Extend Time to Respond to Plaintiffs' First Amended Complaint (Docket Entry No. 19), directing the clerk of court to docket separately Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint and Brief in Support. Defendants' newly filed motion sought dismissal of the RICO claims asserted against Taylor and Kwauk, and the Texas Insurance Code claims asserted against all of the defendants (Docket Entry No. 20).

On April 13, 2015, the court entered a Scheduling Order pursuant to which motions to amend pleadings and join parties were due by September 11, 2015, discovery was to be completed by May 20, 2016, and dispositive motions were to be filed July 29, 2016 (Docket Entry No. 25).

On July 10, 2015, the court granted defendants' motion to dismiss the RICO claims asserted against Taylor and Kwauk, and the Texas Insurance Code claims asserted against all of the defendants (Docket Entry No. 35).

On July 24, 2015, defendants filed a motion to transfer this action from the Dallas Division of the Northern District of Texas, to the Houston Division of the Southern District of Texas (Docket Entry No. 36).  Defendants also filed an Answer to Plaintiffs' First Amended Complaint on the same day (Docket Entry No. 38).

On September 30, 2015, the court granted defendants' motion to transfer (Docket Entry No. 43), and on October 1, 2015, this case was assigned to this court (Docket Entry No. 46).  On October 2, 2015, the court entered an Order stating that "[t]he April 13, 2015, Scheduling Order (Docket Entry No. 25) will continue in effect" (Docket Entry No. 47).

On February 16, 2016, the parties filed a Joint Motion to Amend Scheduling Order (Docket Entry No. 55), asking the court to extend the deadlines as follows: (1) disclosure of expert witnesses from March 11, 2016, to April 22, 2016; (2) disclosure of rebuttal expert witnesses from April 15, 2016, to May 27, 2016; and (3) completion of discovery from May 20, 2016, to June 10, 2016. The court granted the motion the same day (Docket Entry No. 56).

On April 26, 2016, FCL filed Defendant First Continental Life Accident Insurance Co.'s Motion for Leave to File Original Counterclaim and Amend Scheduling Order (Docket Entry No. 58), seeking to assert original counterclaims for fraudulent inducement, fraudulent misrepresentation, breach of contract, and tortious interference with existing contracts.  Plaintiffs responded on

-8-

May 17, 2016, by filing Plaintiffs' Response in Opposition to Defendants' Motion for Leave to File Original Counterclaim and Amend Scheduling Order (Docket Entry No. 61).

On May 16, 2016, defendants filed an Unopposed Motion to Modify Scheduling Order to Extend Deadline to Designate Rebuttal Experts (Docket Entry No. 59), from May 27, 2016, to June 24, 2016, which the court granted the next day (Docket Entry No. 60).

On June 10, 2016 — the date by which discovery was to be completed — FCL filed Defendant First Continental Life Accident Insurance Co.'s Amended and Supplemental Motion for Leave to File Original Counterclaim and Amend Scheduling Order (Docket Entry No. 64).  This motion seeks leave to file original counterclaims for fraudulent inducement, fraudulent misrepresentation, breach of contract, and tortious interference with existing contracts, and also asks the court to extend the deadlines for completion of discovery from June 10 to August 10, 2016, and to extend the deadlines for filing dispositive motions and challenges to experts from July 29 to September 29, 2016.

Plaintiffs responded on June 27, 2016, by filing Plaintiffs' Response in Opposition to Defendant First Continental Life and Accident Insurance Company's Amended and Supplemental Motion for Leave to File Original Counterclaim and Amend Scheduling Order (Docket Entry No. 66), opposing defendants' motion to amend their pleadings to file original counterclaims, but agreeing to extend the deadlines for completing discovery and filing dispositive motions by sixty (60) days.

-9-

## II.  **Standards of Review**

Where a scheduling order has been entered establishing a deadline for amendments to pleadings Federal Rule of Civil Procedure 15(a) provides the standard for requests to amend that are filed before the scheduling order's deadline has expired, and Federal Rule of Civil Procedure 16(b) provides the standard for requests to amend that are filed after the scheduling order's deadline has expired.  Marathon Financial Ins., Inc., RRG v. Ford Motor Co., 591 F.3d 458, 470 (5th Cir. 2009); Fahim v. Marriott Hotel Services, Inc., 551 F.3d 344, 348 (5th Cir. 2008).

Rule 15(a) provides that "the court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "A decision to grant leave is within the discretion of the court, although if the court 'lacks a substantial reason to deny leave, its discretion is not broad enough to permit denial.'"  State of Louisiana v. Litton Mortgage Co., 50 F.3d 1298, 1302-03 (5th Cir. 1995) (quoting Jamieson By and Through Jamieson v. Shaw, 772 F.2d 1205, 1208 (5th Cir. 1985)).  Rule 15(a) provides "a strong presumption in favor of granting leave to amend."  Financial Acquisition Partners, LP v. Blackwell, 440 F.3d 278, 291 (5th Cir. 2006).  Nevertheless, "[d]enial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment."  United States ex rel.

Steury v. Cardinal Health, Inc., 625 F.3d 262, 270 (5th Cir. 2010) (citing Foman v. Davis, 83 S.Ct. 227, 230 (1962)).

"Rule 16(b) provides that once a scheduling order has been entered, it 'may be modified only for good cause and with the judge's consent.'" Marathon, 591 F.3d at 470 (quoting Fed. R. Civ. P. 16(b)(4)). "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" S&W Enterprises L.L.C. v. SouthTrust Bank of Alabama, NA, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A Charles Alan Wright, et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)). To determine whether the moving party has established good cause, courts consider four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." Marathon, 591 F.3d at 470 (quoting Southwestern Bell Telephone Co. v. City of El Paso, 346 F.3d 541, 546 (5th Cir. 2003). If a movant establishes good cause to extend the scheduling order, courts analyze the motion to amend under Rule 15(a). S&W Enterprises, 315 F.3d at 535.

### III.  **Analysis**

FCL seeks leave to assert original counterclaims for fraudulent inducement, fraudulent misrepresentation, breach of

contract, and tortious interference with existing contracts, and also asks the court to extend the deadlines for completion of discovery from June 10, 2016, to August 10, 2016, and for filing dispositive motions from July 29, 2016, to September 29, 2016. FCL argues that its requests to file original counterclaims and extend deadlines meet the requirements of both Rule 15(a) and 16(b).[8] Plaintiffs urge the court to deny FCL's motion because FCL dies not meet Rule 16(b)'s requirement to show good cause.[9]

## A.   Rule 16(b)(4) Applies

The record before the court shows that the scheduling order entered on April 13, 2015, established a deadline of September 11, 2015, to file motions seeking leave to amended pleadings (Docket Entry No. 25); that defendants answered plaintiffs' First Amended Complaint on July 24, 2015 (Docket Entry No. 38); and that the court's scheduling order was amended twice thereafter on February 16, 2016, and on May 17, 2016 (Docket Entry Nos. 56 and 60), but that neither amendment changed the deadline to amend pleadings. Nevertheless, on June 10, 2016 — the date discovery was to be

---

[8]Defendant First Continental Life Accident Insurance Co.'s Amended and Supplemental Motion for Leave to File Original Counterclaim and Amend Scheduling Order ("FCL's Amended Motion to File Original Counterclaim"), Docket Entry No. 64, p. 4 ¶ 8.

[9]Plaintiffs' Response in Opposition to Defendant First Continental Life and Accident Insurance Company's Amended and Supplemental Motion for Leave to File Original Counterclaim and Amend Scheduling Order ("Plaintiffs' Response in Opposition"), Docket Entry No. 66, p. 1.

completed — FCL filed the pending motion for leave to file original counterclaims seeking to add four counterclaims, extend the deadline for discovery from June 10 to August 10, 2016, and extend the deadline for filing dispositive motions from July 29 to September 29, 2016.  Because the deadline for filing motions to amend the pleadings expired nine months earlier on September 11, 2015, FCL must show good cause to amend the court's scheduling order.  Fed. R. Civ. P. 16(b)(4).  See Southwestern Bell, 346 F.3d at 546; S&W Enterprises, 315 F.3d at 535.

**B.     FCL Fails to Show Good Cause**

    1.     FCL Has Provided No Reasonable Explanation for Delay

FCL's amended motion for leave to file original counterclaims states that during the initial months after this action was filed, defendants channeled their resources towards defeating plaintiffs' RICO claims and having the action transferred to this court.[10]  FCL states that once the defendants started taking depositions in October of 2015,

> it became clear that Plaintiffs' breach of their agreement with OraQuest, in fact, involved perpetuating a fraud on OraQuest.  Much of the evidence cited in OraQuest's proposed original counterclaim is based on Plaintiffs' internal communications produced in documents in November and December 2015 (only four to five months ago) and testimony of Mr. Murphy, taken on February 3, 2016 (only two months ago).  Thus, OraQuest now seeks

---

[10]FCL's Amended Motion to File Original Counterclaim, Docket Entry No. 64, p. 3 ¶¶ 1-3.

leave from this Court to file the original counterclaim attached hereto as Exhibit A.[11]

FCL adds that

5.    On April 26, 2016, OraQuest filed its motion for leave to file original counterclaim and amend scheduling order [Dkt. 58], which included counterclaims setting forth the claims arising from OraQuest's good faith belie[f] that Plaintiffs had perpetrated a fraud on OraQuest.

6.    On May 5, 2016, OraQuest issued a subpoena on Ms. Anna Krenzien for a deposition to take place on her first available date on June 8, 2016. On June 8, 2016, OraQuest deposed Ms. Anna Krenzien, and learned for the first time that PrevMED had not merely been intentionally misrepresenting OraQuest's dental policy, but was actually partnering with a competing dental provider, Mobile Dental, in order to avoid providing the services it had contracted to provide. Given that Ms. Krenzien was only one of the liaisons between PrevMED and Mobile Dental, she was only able to provide a window into what appears to be a carefully designed scheme to defraud OraQuest and even, potentially, Medicaid.[12]

Asserting that they "have no objection to a 60-day extension of time during which Defendant[s] may conduct discovery related to the allegations made by Krenzien and the subsequent delay of the dispositive motion deadlines,"[13] plaintiffs nevertheless urge the

---

[11]Id. at ¶ 4.

[12]Id. at 4 ¶¶ 5-6.

[13]Plaintiffs' Response in Opposition, Docket Entry No. 66, p. 23.

court to deny FCL's motion to file original counterclaims.[14]
Plaintiffs argue that defendants

> failed to exercise due diligence in attempting to meet
> the scheduling order deadline pertaining to amending
> pleadings. Despite its claims otherwise, Defendant was
> aware of the alleged facts and pertinent witnesses
> underlying the putatively "newly discovered facts" and
> "newly discovered scheme" since at least August 22, 2014
> — 658 days before Defendant filed the Motion. Defendant
> had time between then and the deadline in the scheduling
> order to analyze and determine whether it could assert
> counterclaims. Because Defendant became aware of the
> basis of the proposed counterclaims well in advance of
> the scheduling order's deadline, Defendant's failure to
> meet the deadline shows a lack of diligence rendering the
> request to amend untimely.[15]

As evidence that defendants were aware of the factual bases for the
proposed counterclaims well before the scheduling order's September
11, 2015, deadline for amending pleadings, plaintiffs cite the
initial disclosures that defendants served upon plaintiffs on April
28, 2015, affirmative defenses asserted in the Answer that
defendants filed on July 24, 2015, and excerpts from the deposition
testimony of defendant Kwauk.

FCL seeks to assert counterclaims against plaintiffs for
fraudulent inducement, fraudulent misrepresentation, breach of
contract, and tortious interference with existing contracts, but
FCL has not provided a reasonable or persuasive explanation for its
delay in seeking leave to assert these four counterclaims beyond

---

[14]Id.

[15]Id.

the scheduling order's September 11, 2015, deadline for amendment of pleadings.[16]  Instead, FCL explains the delay as follows:

> OraQuest did not move for leave to file its original counterclaim before the September 11 deadline because (1) motions [to] dismiss had only just been granted and the parties, at that time, were still entrenched in arguments regarding venue; (2) at the time of the deadline, only limited discovery had been initiated and many key documents and testimony on which OraQuest relies in asserting its counterclaims were not discovered until after the deadline to amend; and (3) OraQuest was not able to confirm the damages flowing from PrevMED's conduct until recently due to the nature of the damages. . . . The magnitude and extent of the impact of OraQuest being forced [to] take over the services previously offered by PrevMED were not readily apparent until even this month.  Once OraQuest was able to confirm its damages, OraQuest immediately drafted its original counterclaim and is now seeking leave to file it.[17]

Missing from FCL's briefing is any argument or evidence from which the court could conclude that defendants acted diligently to identify and assert their counterclaims, or that despite that diligence, the counterclaims that FCL now seeks leave to assert could not have been asserted by the September 11, 2015, deadline for filing motions to amend the pleadings established in the court's April 13, 2015, scheduling order.  Also missing from FCL's briefing is any evidence from which the court could conclude that the defendants were not aware of the information on which their proposed counterclaims are based before the deadline for amending

---

[16]Exhibit A attached to FCL's Amended Motion to File Original Counterclaim, Docket Entry No. 64-1.

[17]FCL's Amended Motion to File Original Counterclaim, Docket Entry No. 64, p. 5 ¶ 10.

pleadings expired on September 11, 2015; that pertinent discovery could not have been completed prior to the deadline for amending pleadings, or that defendants needed to know the full extent of their damages prior to asserting their proposed counterclaims. Instead, FCL's explanation for delay merely states that prior to expiration of the deadline for amendment of pleadings defendants chose to focus on other issues such as venue, that due to limited discovery defendants had not discovered key evidence, and were not able to confirm the extent of their damages.

The court is not persuaded that FCL's explanations for defendants' delay in seeking leave to amend satisfy Rule 16(b)'s good cause standard because FCL fails to cite any evidence capable of establishing that despite defendants' diligence, defendants could not reasonably have met the September 11, 2015, deadline for amending their pleadings to add their proposed counterclaims. See S&W Enterprises, 315 F.3d at 535. Moreover, uncontroverted evidence cited in plaintiffs' response in opposition shows not only that defendants were aware of facts on which their proposed counterclaims are based before plaintiffs filed suit, but also that defendants purposely delayed developing those facts through discovery until after the deadline for amending their pleadings had passed. For example, FCL contends that on June 8, 2016, when Krenzien was deposed, defendants learned for the first time that PrevMED had not only been misrepresenting OraQuest's dental policy,

but was actually partnering with a competing dental provider, Mobile Dental, in order to avoid providing the services it had contracted to provide.[18]  FCL's contention that defendants learned of PrevMED's alleged fraud for the first time during Krenzien's deposition is however belied by the initial disclosures that defendants served upon plaintiffs on April 28, 2015, by affirmative defenses asserted in the Answer that defendants filed on July 24, 2015, and by excerpts from defendant Kwauk's deposition.

On April 28, 2015, defendants served plaintiffs with initial disclosures that identified Krenzien as "a former account representative" who "is expected to have information concerning PrevMED's marketing of dental services."[19]  Yet despite having identified Krenzien as an individual likely to have discoverable information on April 28, 2015, defendants waited over a year — until May 5, 2016 — to subpoena Krenzien for a deposition on Krenzien's first available date of June 8, 2016 — only two days before the date discovery was to be completed, i.e., June 10, 2016.[20]  Defendants have not offered any explanation for their delay in seeking to depose Krenzien.

---

[18]Id. at 4 ¶¶ 5-6.

[19]Defendants' Rule 26(a)(1) Initial Disclosures, p. 3 ¶ 8; Docket Entry No. 66-7, p. 4.

[20]See FCL's Amended Motion to File Original Counterclaim, Docket Entry No. 64, p. 4 ¶ 6 ("On May 5, 2016, OraQuest issued a subpoena on Ms. Anna Krenzien for a deposition to take place on her first available date on June 8, 2016.").

Affirmative defenses pleaded in Defendants' Answer to Plaintiffs' First Amended Complaint filed on July 24, 2015, include assertions that "Plaintiffs' claims are barred, in whole or in part, by the doctrine of anticipatory repudiation,"[21] and that "Plaintiffs' claims are barred, in whole or in part, because their alleged damages or losses were the result of their own acts, omissions, negligence, fraud, and/or breach of obligations."[22] These affirmative defenses show that defendants knew about many — if not all — of the fraud-based counterclaims that FCL now seeks leave to assert well before the deadline for filing motions to amend expired on September 11, 2015.

Excerpts from defendant Kwauk's deposition cited in plaintiffs' response in opposition show that prior to terminating the contract with PrevMED, (1) defendants knew that Krenzien had misrepresented their policy, and (2) defendants had received information that PrevMED was working with Dr. Reed and Mobile Dental, but that defendants failed to investigate that information. In relevant part, Kwauk testified that the reason defendants decided to terminate the Contract with PrevMED was that PrevMED "consistently misrepresented our policy to our policyholders and to

---

[21]Docket Entry No. 38, p. 14 ¶ 155.

[22]Id. at ¶ 158.

-19-

the nursing home staff."[23]   When pressed to identify individuals who
misrepresented the policy, Kwauk named Krenzien.[24]   Kwauk also said:

> I was told that PrevMED ha[d] entered into some kind of
> relationship with Dr. Reed in the Dallas area.  He is the
> founder of a practice -- dental practice called Mobile
> Dental.   And they were working together.   And PrevMED
> would identify a number of residents who might qualify to
> get our plan, and they would work with Dr. Reed to weed
> out those residents who required a lot of work.
>
>     And Dr. Reed would treat them and bill them first.
> And then after his billing is done, then he promised to
> refer those patients to the PrevMED program or OraQuest's
> policy.[25]

When asked if defendants investigated the claim that PrevMED was
working with Dr. Reed and Mobile Dental, Kwauk testified, "I don't
think we did."[26]

    FCL's failure to argue or make any showing from which the
court could conclude that defendants were not aware of facts
underlying the counterclaims they now seek leave to assert before
the deadline for amending pleadings expired on September 11, 2015,
that defendants were diligent in identifying their proposed
counterclaims, or that despite being diligent in identifying their
proposed counterclaims defendants were unable to assert those

---

[23]Oral Deposition of Paul S. Kwauk, p. 10:11-12, Exhibit A to
Plaintiffs' Response in Opposition, Docket Entry No. 66-1, p. 3.

[24]Id. at 15:18-16:5, Docket Entry No. 66-1, pp. 4-5.

[25]Id. at 202:25-203:11, Docket Entry No. 66-1, pp. 11-12.

[26]Id. at 203:19-20, Docket Entry No. 66-1, p. 12.

counterclaims any earlier than nine months after the deadline for amendment to pleadings expired, leads the court to conclude that this factor weighs against FCL because FCL has failed to provide any reasonable explanation for defendants' delay in seeking leave to amend. See Southwestern Bell, 346 F.3d at 547 (denying leave to amend upon finding that "[movant] was aware of the contract that forms the basis of its proposed [counterclaim] months ago and does not offer a satisfactory explanation for its delay in seeking leave to amend"); Steptoe v. JPMorgan Chase Bank NA, Civil Action No. 4:11-CV-3427, 2013 WL 150305, at *1 (S.D. .Tex. January 12, 2013) (assertion of unconvincing or conclusory explanations for delay in filing a motion for leave to amend more than eight months after the scheduling order deadline was sufficient cause for court to deny leave to amend for lack of good cause under Rule 16). See S&W Enterprises, 315 F.3d at 535 (denying motion to amend filed "more than three months after the deadline for amendment").

## 2.   Importance of the Amendment

FCL argues that "even if OraQuest's explanation for its dely were somehow insufficient, failure to meet the first factor does not preclude the [c]ourt from granting leave to amend, particularly where, as here, the proposed amendments are vital to the movant's

recovery."[27]   Asserting that "OraQuest's proposed causes of action arise out of the same transaction on which Plaintiffs['] pending claims rely,"[28] FCL argues that "OraQuest's proposed amendments, thus, have 'particular importance' since denial of leave to amend will deprive OraQuest of ever litigating its valid claims."[29]

Plaintiffs do not dispute that the counterclaims FCL seeks leave to assert are important and, in fact, have acknowledged that the counterclaims defendants are seeking leave to assert are compulsory counterclaims.[30]   See National Equipment Rental v. Fowler, 287 F.2d 43, 46 (2d Cir. 1961) (recognizing that fraudulent inducement was compulsory counterclaim to breach-of-contract claim such that, whether pleaded or not, adjudication of breach-of-contract claim would be final adjudication of fraud claim).   Citing Filgueira v. U.S. Bank National Association, 734 F.3d 420, 423 (5th Cir. 2013) (per curiam), plaintiffs argue that "[t]he [c]ourt may refuse leave to amend if the amendment's importance is undermined

---

[27]FCL's Amended Motion to File Original Counterclaim, Docket Entry No. 64, p. 6 ¶ 12.

[28]Id. at 7 ¶ 14.

[29]Id.

[30]Plaintiffs' Response in Opposition, Docket Entry No. 66, pp. 18-20.   See also Plaintiffs' Response in Opposition to Defendants' Motion for Leave to File Original Counterclaim and Amend Scheduling Order, Docket Entry No. 61, p. 18 ("[Defendants' are attempting to assert a compulsory counterclaim that should and could have been asserted by September 11, 2015.").

by its futility."[31]   Plaintiffs contend that FCL's proposed counterclaims would be futile because

> Defendant could not prevail on any of the claims as plead in its Original Counterclaim.  As more fully discussed in Plaintiffs' original response to Defendant's Motion for Leave to File Original Counterclaim,  Defendant has failed to properly plead fraudulent misrepresentation or fraudulent inducement, both of which require a specific instance in which a speaker intentionally or recklessly made a statement for the purpose of inducing the Defendant's reliance. . .  Defendant's failure to plead a specific instance where Plaintiffs misrepresented the policy or failed to provide services under the policy undermines both Defendant's fraudulent misrepresentation and fraudulent inducement claims.
>
> Likewise, Defendant's breach of contract claim is wholly unsubstantiated by any of its allegations.  Defendant's tortious interference claims rel[y] on the same allegations as the breach of contract claim — all known to the Defendant since August, 2014.  In the Original Counterclaim, the Defendant states that "PrevMED breached the contract by failing to make provision for services covered under the OraQuest Policies."  (Dkt. 64-1, Proposed Original Counterclaim, ¶ 58).  The Defendant fails to identify any instance where PrevMED failed to provide services covered under the policies.  In addition, while Defendant asserts a tortious interference with existing contractual relationships claim, the claim is unsubstantiated by the allegations in the Defendant's counterclaim.  As has been established by Taylor's and Kwauk's deposition testimony, it was the Defendant who made the decision to terminate the relationship with PrevMED.  PrevMED's clinical providers had a duty to notify their patients that they would no longer be providing services and the clinicians went on to complete all procedures that had already commenced.  The legally required notification of patients regarding the discontinuance of services does not constitute a willful and intentional act of interference as is required to properly plead tortious interference with an existing contract.  There are absolutely no facts plead in support

---

[31]Plaintiffs' Response in Opposition, Docket Entry No. 66, p. 18.

of the bald claim that the Plaintiffs attempted to, or in
fact did, interfere with Defendant's relationship with
its policy members.   The futility of the Defendant's
counterclaims undermines their alleged importance.[32]

Filgueira is inapposite because there the court held that the

plaintiff failed to show the importance of the proposed amendment.

Id. at 423.   As additional support for the conclusion that the

plaintiff had failed to establish the importance of the proposed

amendment, the court also stated in dicta that the proposed

amendment would be futile.  Here, plaintiffs do not argue that the

counterclaims FCL seeks to add are not important.   Plaintiffs'

contention that the proposed counterclaims would be futile is based

on assertions that the counterclaims are inadequately pleaded; not

that they are unimportant.   Accordingly, the court concludes that

this factor weighs in favor of FCL.


   3.   Potential Prejudice to Plaintiffs and Availability of a
        Continuance to Cure Prejudice

   Citing Kellogg Brown & Root International, Inc. v. Altanmia

Commercial Marketing Co. W.L.L., Civil Action No. H-07-2684, 2008

WL 5114962, *14 (S.D. Tex. December 3, 2008), FCL argues that

   factors three and four weigh in favor of OraQuest since
   the Court need only extend the discovery deadline and the
   deadlines for summary judgments to prevent any potential
   prejudice, and this can be done without moving the trial

_____

[32]Id. at 18-19.

date since <u>no trial date has yet been set</u>. Thus the amendment will not result in undue prejudice.[33]

Asserting that FCL's proposed counterclaims will significantly expand the scope of this lawsuit, plaintiffs argue that FCL's motion for leave to amend should be denied because addition of the proposed counterclaims will prejudice them by causing undue delay.[34]

Plaintiffs argue that they

conducted all pertinent discovery with an eye towards the disclosure of experts, the preparation of its expert report, and the close of discovery. Moreover, the Plaintiffs scheduled depositions, sought documents, and served written discovery all with a view to meet the court-mandated deadlines. In contrast, the Defendant, absent any plausible justification whatsoever, delayed pursuing discovery and amending its answer to add counterclaims. Now, nine months later, the Defendant seeks to assert counterclaims. Knowing the Plaintiffs are ready to go to trial, the Defendant seeks delay by attempting to bring these claims.[35]

Plaintiffs also argue that while they

do not object to an additional 60 days for Defendant to conduct discovery related to allegations made by Krenzien at her deposition, and the concomitant extension of dispositive motion deadlines, the fact remains that Plaintiffs have diligently worked to meet all discovery deadlines. Plaintiffs are ready to move forward with dispositive motions. If the Defendant is allowed to file counterclaims at this late date, new discovery deadlines would be necessary, trial would be pushed later into 2017, and the filing of dispositive motions for which the

---

[33]FCL's Amended Motion to File Original Counterclaim, Docket Entry No. 64, p. 7 ¶ 14.

[34]Plaintiffs' Response in Opposition, Docket Entry No. 66, pp. 21-23.

[35]<u>Id.</u> at 21.

Plaintiffs have diligently conducted discovery and are currently preparing would be unnecessarily delayed.[36]

FCL does not dispute that the addition of new counterclaims will create a need for additional discovery that, in turn, will require extensions of both the June 10, 2016, deadline for completion of discovery and the July 29, 2016, deadline for the submission of dispositive motions provided by the court's existing scheduling orders (Docket Entry No. 25 and 56). FCL's contention that the plaintiffs will not be prejudiced because no trial date has yet been set, does not negate the fact that the addition of new claims and bases for relief at this late date — over a year and a half after the original complaint was filed — will undoubtedly delay the discovery process and prejudice the plaintiffs by requiring them to investigate and defend against these new counterclaims. See S&W Enterprises, 315 F.3d at 537 (affirming denial of motion to amend in part because the non-movant "would be required to conduct additional discovery").

The Fifth Circuit has noted that although prejudice to a party could be "ameliorated by a continuance . . . delaying . . . trial never is ideal." Rushing v. Kansas City Southern Railway Co., 185 F.3d 508, 509 (5th Cir. 1999), cert. denied, 120 S. Ct. 1171 (2000), overruled on other grounds, Mathis v. Exxon Corp., 302 F.3d 448, 459 n.16 (5th Cir. 2002). Although the court could extend the

---

[36]Id. at 22.

discovery and other remaining deadlines, an extension would not cure the additional time and expense required to conduct discovery on new counterclaims. "Moreover, a continuance would [neither] deter future dilatory behavior, nor serve to enforce . . . court imposed scheduling orders." Geiserman v. MacDonald, 893 F.2d 787, 792 (5th Cir. 1990). See also Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc., 73 F.3d 546, 573 (5th Cir.), cert. denied, 117 S. Ct. 57 (1996) ("While a continuance would have given [the non-offending party] more time to review the late disclosures, such a measure would neither punish [the offending party] for its conduct nor deter similar behavior in the future.").

This action has been pending for over a year and a half, and FCL has not only filed an Answer but also filed a motion to dismiss and a motion to transfer. Absent any reasonable explanation from FCL for the cause of its delay in asserting the proposed new counterclaims it seeks leave to add, the court is not persuaded that amending the scheduling order to extend the deadlines for discovery and dispositive motions that would be needed to accommodate the new counterclaims is warranted. FCL's reliance on Kellogg, 2008 WL 5114962, * 14, in support of its argument that a continuance would cure any prejudice is misplaced because that case is inapposite. Although the court in Kellogg allowed a defendant to file an original counterclaim when there was no imminent trial date, the court did so because the "counterclaim was not filed

after a Rule 16 scheduling order deadline [had] expired." Id. at *13. Distinguishing the posture of that case from cases such as this, the Kellogg court explained that "there are no clear or long-established deadlines that would have to be extended to permit Altanmia's counterclaim; there is no imminent trial date; and KBR would suffer no prejudice because as KBR concedes, the counterclaim is but the 'reverse mirror image' of KBR's own claims." Id. at *14. Such is not the case here. Here, the court concludes that allowing the proposed counterclaims will not only require the court to abandon long-established deadlines for filing motions to amend the pleadings, for completing discovery, and for filing dispositive motions, but will also delay the trial and prejudice the plaintiffs. Accordingly, the court concludes that the third and fourth factors weigh against FCL's motion for leave to file an original counterclaim. See Southwestern Bell, 346 F.3d at 547 (courts have "broad discretion to preserve the integrity and purpose of the pretrial order").

### 4. Conclusions

FCL fails to show good cause for its delay in seeking leave to amend to file original counterclaims. FCL's only reasons for failing to assert its proposed counterclaims by the September 11, 2015, deadline for amending pleadings is that (1) prior to expiration of the deadline for amendment of pleadings defendants

were focused on venue; (2) due to limited discovery, defendants had not discovered key documents and testimony; and (3) defendants had not been able to confirm the extent of their damages.   FCL did, however, assert an affirmative defenses of anticipatory breach and fraud in defendants' answer filed on July 24, 2015, and acknowledges in the background statement included in the pending motion that "much of the evidence cited in [its] proposed original counterclaim is based on . . . [information] produced in November and December 2015 . . . and testimony of Mr. Murphy, taken on February 3, 2016.[37]  Despite this knowledge, FCL waited until April 26, 2016, less than two months before the deadline for completion of discovery on June 10, 2016, to seek leave to assert original counterclaims.   Even assuming that FCL reasonably decided to delay substantive discovery until after the deadline for seeking leave to amend pleadings expired on September 11, 2015, FCL has failed to cite any evidence from which the court could conclude that FCL reasonably delayed seeking leave to file original counterclaims beyond November or December of 2015, when FCL acknowledges acquiring much of the evidence cited in its proposed counterclaim. In addition to failing to explain its delay (both in conducting discovery and seeking leave to assert original counterclaims), FCL fails to demonstrate that allowing the proposed counterclaims to be

---

[37]FCL's Amended Motion to File Original Counterclaim, Docket Entry No. 64, p. 3 ¶ 4.

asserted at this late date would not unduly prejudice the plaintiffs. Since FCL's motion for leave to assert original counterclaim is accompanied by a request to reopen discovery and extend the period for filing dispositive motions, granting the motion will not only impose additional discovery costs on the plaintiffs and but also will delay trial. The court concludes therefore that FCL has failed to establish good cause as required by Rule 16(b)(4) to amend pleadings once the deadline for doing so established by the court's scheduling order has expired. See Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Since, however, plaintiffs do not oppose extending discovery for an additional sixty days for defendants to conduct discovery related to allegations made by Krenzien at her deposition, the court concludes that the scheduling order should be amended accordingly.

## IV.  **Conclusions and Order**

For the reasons stated in § III, above, the court concludes that FCL has failed to establish good cause as required by Rule 16(b)(4) to amend pleadings once the deadline for doing so established by the court's scheduling order has expired. Even if the court were to conclude that FCL had established good cause for delaying its motion seeking leave to file original counterclaims, the court would deny FCL's motion for leave to amend under the Rule

15(a)'s standards because uncontroverted evidence establishes that the defendants were well aware of the facts on which their proposed counterclaims are based long before they filed their first motion seeking leave to amend their pleadings to assert original counterclaims. See Lozano v. Ocwen Fed. Bank, FSB, 489 F.3d 636, 644 (5th Cir. 2007) (affirming the district court's denial of leave to amend under Rule 15 because the plaintiffs "had been aware of the factual underpinnings of the [new] fraud claim for some time, and . . . they had not been diligent in pursuing the claim"). Accordingly, Defendant First Continental Life Accident Insurance Co.'s Amended and Supplemental Motion for Leave to File Original Counterclaim and Amend Scheduling Order, Docket Entry No. 64, is **DENIED.**

Nevertheless, because plaintiffs do not object to extending discovery for an additional sixty days so that the defendants can conduct discovery on allegations made by Krenzien at her deposition, the deadlines in the existing scheduling orders are amended as follows:

- August 10, 2016: Completion of discovery;

- August 24, 2016: Designation of rebuttal expert witnesses; and

- September 29, 2016: Filing of dispositive motions.

The parties are required to mediate at a time agreed upon by the parties.  No motions for summary judgment will be filed until the parties have mediated, and the mediator has declared an impasse.[38]

**SIGNED** at Houston, Texas, on this the 8th day of July, 2016.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[38]See October 2, 2015, Order, Docket Entry No. 47 (directing the parties to mediate and stating that "no motions for summary judgment will be filed until the parties have mediated, and the mediator has declared an impasse").