United States District Court
Southern District of Texas

**ENTERED**

February 28, 2017

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PREVMED, INC.; MID-AMERICA HEALTH, INC.; and MID-AMERICA PROFESSIONAL GROUP, P.C., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-15-2856 |
| MNM-1997, INC. d/b/a ORAQUEST DENTAL PLANS; FIRST CONTINENTAL LIFE & ACCIDENT INSURANCE CO. d/b/a FCL DENTAL; JAMES AMOS TAYLOR; and SEUNG YOP "PAUL" KWAUK, | § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, PrevMED, Inc. ("PrevMED"), Mid-America Health, Inc. ("MAH"), and Mid-America Professional Group, P.C. ("MAPG"), have brought suit against defendants, MNM-1997, Inc. d/b/a Oraquest Dental Plans ("OraQuest"), First Continental Life & Accident Insurance Co. d/b/a FCL Dental ("FCL"), James Amos Taylor ("Taylor"), and Seung Yop "Paul" Kwauk ("Kwauk"), arising from termination of a contract for the provision of dental services to patients at skilled nursing facilities ("SNFs"). Pending before the court are Plaintiffs' Motion to Strike Expert Designations as Untimely (Docket Entry No. 71), Defendants' Motion to Exclude the Expert Testimony and Report of Richard J. Ostiller (Docket Entry No. 79), Defendants' Motion for Summary Judgment (Docket Entry

No. 80), Plaintiffs' Motion to Exclude Expert Testimony of Jeffrey A. Compton (Docket Entry No. 81), Plaintiffs' Motion to Exclude Expert Testimony of Jose Daniel Saenz (Docket Entry No. 82), Plaintiffs' Motion Requesting a Trial Date (Docket Entry No. 83), Defendants' Objections to and Motion to Strike Keith Walls' Affidavit (Docket Entry No. 95), and Plaintiffs' Motion for Leave of Court to Substitute Affidavit of Keith Walls (Docket Entry No. 97). For the reasons explained below, Defendants' Motion for Summary Judgment will be granted in part and denied in part. Except for Plaintiff's Motion to Exclude Expert Testimony of Jose Daniel Saenz, which will be granted, all the other evidentiary motions will be denied or declared moot.

## I.  Factual and Procedural Background

A.  **Undisputed Facts**[1]

Plaintiff PrevMED markets and sells dental services to SNFs and their residents. PrevMED entered into agreements with various Texas SNFs to access their facilities.[2] The agreements that PrevMED entered with various SNFs state:

> The Facility hereby agrees to have PrevMED as a non-exclusive independent contractor arrange for the

---

[1]See Defendants' Motion for Summary Judgment ("Defendants' MSJ"), Docket Entry No. 80, pp. 9-11, and Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment ("Plaintiffs' Response"), Docket Entry No. 88, pp. 9-13.

[2]See Exhibit 2 to Defendants' MSJ, Docket Entry No. 80-3 (FACILITY AGREEMENT TEXAS, SUMMARY of DENTAL SERVICES and RESPONSIBILITIES that PrevMED entered with various Texas SNFs).

provision of onsite dental and oral hygiene services to
the residents of "Facility" who purchase or whose
responsible parties purchase dental/oral hygiene
insurance from "OraQuest." These services will be
provided by dentists whose practices PrevMED manages.
These services will be provided in accordance with the
terms and conditions of this Summary. The dentist and
the resident will establish a doctor/patient relationship
which is independent of this summary and which is
governed by the law of the state of Texas.[3]

Plaintiff MAH is a dental practice management group, and
plaintiff MAPG is a clinician-owned professional group that employs
the dentists and dental hygienists who provide dental services to
residents at PrevMed-contracted SNFs.[4]   Each MAPG-employed
clinician signed a Memorandum of Understanding that provided in
pertinent part that "your employment with MAPG is at will."[5] The
Memorandum of Understanding that each MAPG clinician signed also
contains a Non-Interference with Contractual Relations paragraph
that states:

MAPG and its affiliate, PrevMED, have invested
substantial money, time, goodwill and effort in the
promotion and enhancement of their reputation and
business with the institutions and facilities within
which you will be working, pursuant to and during your
employment. In addition, MAPG and its affiliate, PrevMED
have entrusted you with significant proprietary and
confidential information about the PrevMED Oral Health
Maintenance Program and its operation. It is further
understood that by accepting this employment and the

---

[3]*Id.* at 8.

[4]Plaintiffs' First Amended Complaint, Docket Entry No. 14,
p. 5 ¶ 11.

[5]Memorandum of Understanding, Exhibit 4 to Defendant's MSJ,
Docket Entry No. 80-5. *See also* Exhibit M to Plaintiffs' Response,
Docket Entry No. 88-13.

compensation for said employment you have accepted a position of trust in the nature of fiduciary obligation to promote the best interests of MAPG and PrevMED. You accept the duty to avoid actions which would prejudice, inhibit, or interfere with the continuance and maintenance of any contractual relationships, or which would result in conversion and usurpation of MAPG's and PrevMED's investment to your own benefit or the benefit of others. Upon termination of the employment with MAPG (by either party) I agree not to provide dental or oral hygiene services or to assist anyone in providing dental or oral hygiene services within any PrevMED contracted facilities or institutions for a period of one year from the date of termination.[6]

Some of the Memoranda of Understanding also contain the following sentence and some do not: "This covenant is intended for the benefit of both MAPG and PrevMED and may be enforced by either."[7]

In March of 2011 PrevMED entered into a Letter Agreement ("Contract") with defendant OraQuest, a Health Maintenance Organization ("HMO") registered in the State of Texas.[8] Under the Contract OraQuest agreed to develop a health plan policy ("PrevMED Policy") for sale to SNF residents in Texas to cover the costs of certain dental and oral hygiene services and products to be

---

[6]Id.

[7]Id. (Memorandum signed by Hardev A. Patel, Ginger Bras Horuath, Teresa Washington-Bellow, Tammy Creech, Richardeen S. Bowden, Nicole W. Ray, Deria L. DeZern, Christina Clark, Chung-Lei Kao, Ira S. Mims, Duyen Tran, and Deanna Chaney all contain this sentence while those signed by the following employees do not: Deanna Duckworth, Dr. Timothy Bradbury, Cindy Hines, Sueginn Cha, and Ghias Jabbour).

[8]March 12, 2011, Letter Agreement, Exhibit 1 to Defendants' MSJ, Docket Entry No. 80-2. See also Exhibit B to Plaintiffs' Response, Docket Entry No. 88-2.

delivered on site.[9]   PrevMED agreed to introduce OraQuest to a broker, Senior Dental Solutions ("SDIS"), to sell PrevMED Policies, to assist OraQuest in contracting with a third-party administrator, Group Benefit Services, Inc. ("GBS"), to administer the PrevMED Policies and service to policyholders, to arrange with SNFs to provide for sale of PrevMED Policies to their residents, and to provide monthly dental and oral hygiene services or products to all policyholders.[10]   OraQuest agreed to make PrevMED the exclusive provider of dental and oral hygiene services and products to holders of PrevMED policies in Texas, to instruct GBS to sell the PrevMED Policy only through SDIS, and to instruct GBS to instruct SDIS to sell the PrevMED Policy at such times and to such SNFs as PrevMED shall specify.[11]   The Contract provided that SNF residents who purchased the PrevMED Policy would enter into a contract with OraQuest and pay monthly premiums that would be distributed amongst OraQuest, SDIS, GBS, and PrevMED in accordance with a compensation schedule.[12]   The Contract also contained a termination provision that stated:

> This Agreement shall be effective as of March 15, 2011 and shall continue in full force and effect for a period of one year from such date.   This Agreement shall

---

[9] Id. ¶¶ 1(a), 2.

[10] Id. ¶¶ 1(b)-(d), 5.

[11] Id. ¶¶ 2-4.

[12] Id. ¶ 7.

thereafter be automatically renewed for succeeding terms of one (1) year except as either party gives written notice sixty (60) days in advance of the date when the Agreement would otherwise expire that such party desires to terminate the Agreement.[13]

Each clinician performing services under the Contract was both employed by MAPG and separately contracted with OraQuest as an in-network provider.[14]

In May of 2013 OraQuest initiated an audit of GBS's records and requested a broad range of information.[15] GBS's Chief Executive Officer, Kathy Simmons, questioned the breadth of the information requested and asked, "[I]s it your intention to receive all this information and just render our termination notice?"[16] Paul Kwauk, the Executive Vice-President and Chief Operating Officer of FCL, responded that the information was needed to conduct the audit.[17]

---

[13]Id. ¶ 8.

[14]See OraQuest Dental Plans Dental Provider Agreements, Exhibit 5 to Defendants' MSJ, Docket Entry No. 80-6.  See also Texas Insurance Code § 843.101(b) ("A health maintenance organization may provide or arrange for health care services only through . . . (2) providers or groups of providers who are under contract with or are employed by the health maintenance organization. . .").

[15]May 2, 2013, email from Paul Kwauk to Shelly Rapski and others at GBS, Exhibit K to Plaintiffs' Response, Docket Entry No. 88-11, pp. 2-3.

[16]May 6, 2013, email from Kathy Simmons at GBS to Paul Kwauk at OraQuest, Exhibit L to Plaintiffs' Response, Docket Entry No. 88-12, p. 3.

[17]May 6, 2013, email from Paul Kwauk to Kathy Simmons and Jim Taylor, Exhibit L to Plaintiffs' Response, Docket Entry No. 88-12, p. 2.

Plaintiffs allege but fail to provide evidence showing that "24 days after Ms. Simmons' email, OraQuest terminated its relationship with GBS."[18]

PrevMED and OraQuest operated under the Contract for over three years. During this time OraQuest paid PrevMED for its services according to the Contract's compensation schedule.

On September 17, 2014, an OraQuest employee, Rhonda Johnson, sent an email to an MAH employee, Karen Myrick, asking for marketing and scheduling information:

> Would it be possible for me to get a copy of the marketing information that you provide the facilities. I want to be speaking the same language and be on the same page when giving information about the coverage we provide. Also, you are responsible for scheduling the hygienist and the dentist. When does the schedule go out and [] can I get a copy of it?[19]

On September 29, 2014, defendant James Taylor, President of defendant FCL and Chief Executive Officer of defendant OraQuest, informed PrevMED's president, G. Ellsworth Harris by telephone that as of October 1, 2014, OraQuest would no longer pay for PrevMED's services.[20]

---

[18]Plaintiffs' First Amended Complaint, Docket Entry No. 14, p. 5 ¶ 13.

[19]Emails re Royal Manor Resident, Exhibit J to Plaintiffs' Response, Docket Entry No. 88-10, p. 2.

[20]Video Deposition of G. Ellsworth Harris ("Harris Deposition") at pp. 228:25-229:19, Exhibit A to Plaintiffs' Response, Docket Entry No. 88-1, pp. 3-4.

On October 1, 2014, PrevMED ceased all Texas operations, and all the clinicians working for MAPG in Texas were discharged.[21] Following discharge of MAPG's Texas employees, MAPG ceased doing business or trying to do business in Texas.[22]

OraQuest sent letters to PrevMed-contracted SNFs stating that "effective October 1, 2014, OraQuest Dental Plans, Inc. will no longer continue its partnership with PrevMED, Inc." and that "PrevMED™ Oral Health Maintenance® Plan will no longer be associated with the OraQuest Policy."[23]

Plaintiffs acknowledge that "OraQuest merged with Defendant [FCL] and, as a result, [FCL] assumed the d/b/a OraQuest Dental Plans."[24]

## B.   Procedural Background

On November 7, 2014, plaintiffs filed suit in the Dallas Division of the Northern District of Texas against OraQuest for breach of contract, and against all the defendants for aiding and

---

[21]Video Deposition of Luis Garabis, DDS ("Garabis Deposition") at p. 54:3-13, Exhibit 8 to Defendants' MSJ, Docket Entry No. 80-9, p. 6.   See also October 7, 2014, Letter to Dr. Hardev A. Patel, Exhibit 7 to Defendants' MSJ, Docket Entry No. 80-8 ("RE: Termination of Employment This Letter confirms that your employment with Mid America Professional Group, PC ("MAPG") was terminated effective October 1, 2014.").

[22]Garabis Deposition at p. 53:3-25, Exhibit 8 to Defendants' MSJ, Docket Entry No. 80-9, p. 5.

[23]Letter from OraQuest to SNFs, Exhibit 6 to Defendants' MSJ, Docket Entry No. 80-7.

[24]Plaintiffs' Response, Docket Entry No. 88, p. 9 n.2.

abetting breach of fiduciary duty, violation of the Lanham Act, 15 U.S.C. § 1125, tortious interference with existing and prospective contractual relations, violation of Texas common law of "passing off," misappropriation, civil conspiracy, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and unjust enrichment (Docket Entry No. 1). Plaintiffs sought monetary and injunctive relief from all of the defendants.

On January 30, 2015, defendants filed Defendants' Rule 12(b)(6) Motion to Dismiss (Docket Entry No. 10).

On February 20, 2015, plaintiffs filed Plaintiffs' First Amended Complaint (Docket Entry No. 14), reasserting all the causes of action alleged in their original complaint, but asserting RICO claims only against the two individual defendants, Taylor and Kwauk, and adding a cause of action against all the defendants for violation of the Texas Insurance Code § 541 (Docket Entry No. 14).

On March 12, 2015, defendants filed Defendants' Unopposed Motion to Extend Time to Respond to Plaintiffs' First Amended Complaint (Docket Entry No. 17), in which defendants urged the court to deem as timely filed a motion to dismiss attached thereto. On March 16, 2015, the court entered an Order denying without prejudice defendants' initial January 30, 2015, motion to dismiss (Docket Entry No. 18), and an Order Granting Defendants' Unopposed Motion to Extend Time to Respond to Plaintiffs' First Amended Complaint (Docket Entry No. 19), and directing the clerk of court

-9-

to docket Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs'
First Amended Complaint and Brief in Support.  Defendants' newly
filed motion sought dismissal of the RICO claims asserted against
Taylor and Kwauk and the Texas Insurance Code claims asserted
against all of the defendants (Docket Entry No. 20).

On July 10, 2015, the court granted defendants' motion to
dismiss the RICO claims asserted against Taylor and Kwauk and the
Texas Insurance Code claims asserted against all of the defendants
(Docket Entry No. 35).

On July 24, 2015, defendants filed a motion to transfer this
action from the Dallas Division of the Northern District of Texas
to the Houston Division of the Southern District of Texas (Docket
Entry No. 36).  Defendants also filed an Answer to Plaintiffs'
First Amended Complaint on the same day (Docket Entry No. 38).

On September 30, 2015, the court granted defendants' motion to
transfer (Docket Entry No. 43), and on October 1, 2015, the action
was assigned to this court (Docket Entry No. 46).

On February 16, 2016, the parties filed a Joint Motion to
Amend Scheduling Order (Docket Entry No. 55), asking the court to
extend the deadlines as follows:  (1) designation of expert
witnesses from March 11, 2016, to April 22, 2016; (2) designation
of rebuttal expert witnesses from April 15, 2016, to May 27, 2016;
(3) completion of discovery from May 20, 2016, to June 10, 2016.
The court granted the motion the same day (Docket Entry No. 56).

On April 26, 2016, FCL filed Defendant First Continental Life Accident Insurance Co.'s Motion for Leave to File Original Counterclaim and Amend Scheduling Order (Docket Entry No. 58), seeking to assert original counterclaims for fraudulent inducement, fraudulent misrepresentation, breach of contract, and tortious interference with existing contracts. Plaintiffs responded on May 17, 2016, by filing Plaintiffs' Response in Opposition to Defendants' Motion for Leave to File Original Counterclaim and Amend Scheduling Order (Docket Entry No. 61).

On May 16, 2016, defendants filed an Unopposed Motion to Modify Scheduling Order to Extend Deadline to Designate Rebuttal Experts (Docket Entry No. 59) from May 27, 2016, to June 24, 2016, which the court granted the next day (Docket Entry No. 60).

On June 10, 2016 — the date by which discovery was to be completed — FCL filed Defendant First Continental Life Accident Insurance Co.'s Amended and Supplemental Motion for Leave to File Original Counterclaim and Amend Scheduling Order (Docket Entry No. 64), seeking leave to file original counterclaims for fraudulent inducement, fraudulent misrepresentation, breach of contract, and tortious interference with existing contracts, and asking the court to extend the deadlines for completion of discovery from June 10 to August 10, 2016, and for filing dispositive motions and challenges to experts from July 29 to September 29, 2016.

On July 8, 2016, the court entered a Memorandum Opinion and Order (Docket Entry No. 67) denying Defendant First Continental Life Accident Insurance Co.'s Amended and Supplemental Motion for Leave to File Original Counterclaim (Docket Entry No. 64).

## II.  Defendants' Motion for Summary Judgment

The live claims in this action are plaintiffs' claims against OraQuest for breach of contract, and against all of the defendants for tortious interference with existing and prospective contractual relations, aiding and abetting breach of fiduciary duty, violation of the Lanham Act, 15 U.S.C. § 1125, civil conspiracy, and violations of Texas common law of "passing off," misappropriation, and unjust enrichment (Docket Entry No. 14).  Plaintiffs seek both monetary and injunctive relief from all of the defendants. Defendants do not seek summary judgment on PrevMed's breach of contract claim against Oraquest or plaintiffs' unjust enrichment claims, but seek summary judgment on all of the other live claims asserted in this action.

## A.  Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

-12-

<u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>). If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial. <u>Id.</u> Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." <u>Id.</u>

**B.    Analysis**

   1.   <u>Breach of Contract Claims</u>

Plaintiffs allege that they had an agreement and contract with OraQuest, that they and OraQuest agreed that neither would terminate the agreement except upon notice 60 days in advance of the yearly renewal date, March 15, and that OraQuest breached its obligation to provide notice under its contract by informing

-13-

PrevMED of its network termination only two days before the termination took effect. Plaintiffs allege that this notice period was inadequate by 165 days under the requirements of the parties' contract, that OraQuest intended its breach to interrupt PrevMED's services in Texas so that OraQuest could appropriate PrevMED's relationships with Texas SNFs and practitioners, that OraQuest owes PrevMED an outstanding balance of $409,100.00 under the parties' contract, and that OraQuest has wrongfully refused PrevMED's demands to pay the amount due.[25]

Asserting that "[a]ll plaintiffs alleged that they 'had an agreement and contract with OraQuest'. . . ., but that is not true,"[26] defendants argue that they are entitled to summary judgment on the breach of contract claims that MAH and MAPG have asserted because neither of these two plaintiffs had a contractual relationship with any of the defendants.[27] Without disputing that neither MAH nor MAPG had a contract with any of the defendants, plaintiffs respond that "PrevMED's claim for breach of contract is on behalf of PrevMED only, not MAH or MAPG."[28] Accordingly, the court concludes that defendants are entitled to summary judgment on the breach of contract claims asserted by MAH and MAPG.

_____

[25]Plaintiff's First Amended Complaint, Docket Entry No. 14, pp. 29-30 ¶¶ 57-64.

[26]Defendants' MSJ, Docket Entry No. 80, p. 14.

[27]*Id.*

[28]Plaintiffs' Response, Docket Entry No. 88, p. 14.

2.   <u>Tortious Interference with Contracts</u>

Plaintiffs allege that they had valid and enforceable contracts with at least 103 Texas SNFs and an unidentified number of Texas clinicians employed by MAPG; that they had a reasonable probability of entering into new contractual relationships with additional SNFs and clinicians at a rate consistent with PrevMED's historical 60% annual growth; that defendants intentionally, willfully, and maliciously interfered with both their existing and prospective contracts; that defendants' conduct was independently tortious, unlawful, and without justification, excuse, or privilege; and that defendants' conduct caused plaintiffs to suffer damages in an amount that exceeds the jurisdictional requirements of this court.[29]

(a)   Applicable Law

Texas law recognizes claims for tortious interference with both existing and prospective contracts.  A party alleging tortious interference with an existing contract must prove (1) that a contract subject to interference exists; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused damage; and (4) that actual damage or loss occurred.  <u>Prudential Insurance Co. of America v. Financial Review Services, Inc.</u>, 29 S.W.3d 74, 77 (Tex. 2000)

---

[29]Plaintiff's First Amended Complaint, Docket Entry No. 14, pp. 33-34 ¶¶ 85-97.

(citing <u>ACS Investors, Inc. v. McLaughlin</u>, 943 S.W.2d 426, 430 (Tex. 1997)). While Texas law formerly required proof that the act of interference was unjustified, subsequent authority has established that justification for interference is an affirmative defense. <u>See</u> <u>Sterner v. Marathon Oil Co.</u>, 767 S.W.2d 686, 690 (Tex. 1989) (overruling <u>Sakowitz, Inc. v. Steck</u>, 669 S.W.2d 105, 107 (Tex. 1984), to the extent that it placed the burden of proving justification on the party asserting the claim).

A party alleging tortious interference with a prospective contract must prove: (1) a reasonable probability that the parties would have entered into a contract; (2) an independently tortious or unlawful act by the defendant that prevented the contractual relationship; (3) the defendant committed the act with a conscious desire to prevent the contract or knew that such interference was substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the interference. <u>Faucette v. Chantos</u>, 322 S.W.3d 901, 914 (Tex. App. — Houston [14th Dist.] 2010, no pet.) (citing <u>Wal-Mart Stores, Inc. v. Sturges</u>, 52 S.W.3d 711, 726 (Tex. 2001)). Independently tortious conduct means "conduct [that] would be actionable under a recognized tort," such as threats of physical harm or fraudulent statement. <u>Wal-Mart</u>, 52 S.W.3d at 726. <u>See also</u> <u>Advanced Nano Coatings, Inc. v. Hanafin</u>, 478 F. App'x 838, 845 (5th Cir. 2012) (setting forth the same elements of a claim for tortious interference with prospective contract).

    (b)   Application of the Law to the Facts

      **(1)   Plaintiffs' Contracts with SNFs**

        (i)   <u>MAPG's and MAH's Contracts with SNFs</u>

Asserting that only PrevMED had contracts with SNFs, defendants argue that MAPG's and MAH's claims for tortious interference with SNF contracts — existing and prospective — fail as a matter of law because plaintiffs are unable to show that either of these two plaintiffs had existing or prospective contracts with any SNFs subject to interference.[30]   Plaintiffs acknowledge that PrevMED had contracts with SNFs, but fail either to argue or to cite any evidence that MAPG or MAH had existing or prospective contracts with SNFs.   Any claim that MAPG or MAH is asserting or attempting to assert for tortious interference with existing or prospective contracts with SNFs therefore fails because a cause of action for tortious interference will not lie in the absence of an existing contract or a reasonable probability that a contract would be entered.   See <u>Texas Disposal System Landfill, Inc. v. Waste Management Holdings, Inc.</u>, 219 S.W.3d 563, 588 (Tex. App. — Austin 2007, pet. denied) ("A cause of action for tortious interference will not lie in the absence of a contract.").   Accordingly, defendants are entitled to summary judgment on claims

------

[30]Defendants' MSJ, Docket Entry No. 80, p. 17.

that MAPG and MAH are asserting for tortious interference with existing and prospective SNF contracts.[31]

(ii)   <u>PrevMED's Contracts with SNFs</u>

(A)   Existing Contracts

Defendants argue that PrevMED's claims for tortious interference with existing SNF contracts fail as a matter of law because "there is no evidence that OraQuest induced the SNFs to breach their agreements with PrevMED."[32]   Citing <u>All American Telephone, Inc. v. USLD Communications, Inc.</u>, 291 S.W.3d 518, 532 (Tex. App. — Fort Worth 2009, pet. denied), defendants argue that "[f]or a plaintiff to maintain a tortious interference claim, it must produce some evidence that the defendant knowingly induced one of the contracting parties to breach its obligations under a contract."[33]   Defendants argue that they are entitled to summary judgment because plaintiffs cite no evidence that any SNF breached

---

[31]Citing <u>Astoria Industries of Iowa, Inc. v. SNF, Inc.</u>, 223 S.W.3d 616, 633 (Tex. App. — Fort Worth 2007, pet. denied), plaintiffs argue that "[w]ith regard to MAH and MAPG, irrespective of whether they had written contracts with the SNFs, their relationships with the SNFs are protected against interference as continuous business relationships."   Plaintiffs' Response, Docket Entry No. 88, p. 22.   While Texas law does protect against interference with continuous business relationships, plaintiffs not only failed to allege such claims, but have also failed to cite any evidence showing that MAH or MAPG had business relationships with any Texas SNF.

[32]Defendants' MSJ, Docket Entry No. 80, p. 18.

[33]<u>Id.</u>

a contract with PrevMED, or that OraQuest intended to induce any SNF to do so.[34]

Plaintiffs respond that PrevMED had existing contracts with 103 SNFs throughout Texas, and that as a result of defendants' actions, PrevMED was forced to cease doing business with those SNFs. Citing <u>Khan v. GBAK Properties, Inc.</u>, 371 S.W.3d 347, 359-60 (Tex. App. — Houston [1st Dist.] 2012, no pet.), plaintiffs argue that "[t]o establish tortious interference with existing contract, a plaintiff is not limited to showing the contract was actually breached. Any interference that makes performance more burdensome or difficult or of less or no value to the one entitled to performance is actionable."[35]  Plaintiffs explain that PrevMED

> could not afford to continue operations at the SNFs because, without OraQuest's payments, the only source of compensation for services was directly from SNF patients, who would be required to pay out-of-pocket. (Ex. R, Deposition of PrevMED 30(b)(6) Representative, Patrick Murphy, . . . 15:4-20:4). In addition, PrevMED was not able to negotiate and contract with another HMO with the unlawful termination-notice of only two days provided to it by OraQuest, as the Defendants intended. *Id.* Indeed, the Defendants contend that PrevMED could not have successfully continued operating in the Texas market with a notice of 60 days [Dkt. No. 79, p. 11] — OraQuest's contention (as well as common sense) evidences OraQuest's intention to eliminate PrevMED from the Texas market by providing notice of only two days.  Therefore, the Defendants are liable for tortious interference with existing contracts.[36]

---

[34]<u>Id.</u>

[35]Plaintiffs' Response, Docket Entry No. 88, p. 19.

[36]<u>Id.</u> at 18-19.

Plaintiffs have alleged a single act of interference with PrevMED's SNF contracts:  OraQuest's intentional cancellation of its Contract with PrevMED with only two days' notice.  Defendants have not presented any legal arguments as to why OraQuest's cancellation of its contract with PrevMED and alleged breach of contract with PrevMED cannot support a claim for tortious interference with PrevMED's SNF contracts.  In their briefing, defendants assume, without explanation, that plaintiffs' tortious interference claim must be based on evidence that the defendants induced the SNFs to breach their contracts with PrevMED.  In <u>Khan</u>, however, the court recognized that a defendant may be held liable for interference by actions that do not necessarily induce a breach of contract but which injure a plaintiff by making plaintiff's performance of a contract "more burdensome or difficult or of less or no value."  371 S.W.3d at 360 (quoting <u>Tippett v. Hart</u>, 497 S.W.2d 606, 610 (Tex. Civ. App. — Amarillo 1973), writ ref'd n.r.e. per curiam, 501 S.W.2d 874 (Tex. 1973)).

Likewise, the Restatement (Second) of Torts § 766A, entitled "Intentional Interference with Another's Performance of His Own Contract" provides as follows:

> One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

Restatement (Second) of Torts § 766A (1979).  Comment a to § 766A explains that this section "is concerned only with the actor's

intentional interference with the plaintiff's performance of his own contract, either by preventing that performance or making it more expensive or burdensome." <u>Id.</u> cmt. a. Comment a also states that § 766A "is to be contrasted with § 766, which states the rule for the actor's intentional interference with a third person's performance of his existing contract with the plaintiff," and section 766B, which concerns "the actor's intentional interference with the plaintiff's prospective contractual relations." <u>Id.</u> <u>See also</u> <u>Faucette</u>, 322 S.W.3d at 916-17 (citing these sections of the <u>Restatement (Second) of Torts</u> in support of its observation that the various theories of tortious interference should not be conflated). Thus "[t]o establish tortious interference with [an] existing contract, a plaintiff is not limited to showing the contract was actually breached." <u>Lamont v. Vaquillas Energy Lopeno Ltd., LLP</u>, 421 S.W.3d 198, 216 (Tex. App. — San Antonio 2013, no pet.) (quoting <u>Khan</u>, 371 S.W.3d at 359-60). Accordingly, the court is not persuaded that defendants are entitled to summary judgment on PrevMED's claims for tortious interference with its existing contracts with Texas SNFs merely because there is no evidence that defendants induced the SNFs to breach their contracts with PrevMED.

Generally, the failure to perform the terms of a contract is a breach of contract, not a tort. <u>Bank One, Texas, N.A. v. Stewart</u>, 967 S.W.2d 419, 447 (Tex. App. — Houston [14th Dist.] 1998, pet. denied). A knowing and intentional breach of one's own

contract, however, may be a willful act constituting tortious interference with a third-party contract if the breach has the purpose and effect of preventing another from performing that third-party contract. See American National Petroleum Co. v. Transcontinental Gas Pipe Line Corp., 798 S.W.2d 274, 279 (Tex. 1990). See also Rodriguez v. NBC Bank, 5 S.W.3d 756, 766 (Tex. App. — San Antonio 1999, no pet.) ("Assuming without deciding that an action for tortious interference would lie in addition to a breach of contract claim. . ."). Moreover, the general rule in Texas is that corporate agents may be held individually liable for tortious acts committed while in the service of their corporation. See Miller v. Keyser, 90 S.W.3d 712, 717 (Tex. 2002) ("a corporate agent is personally liable for his own fraudulent or tortious acts"). See also Pension Advisory Group, Ltd. v. Country Life Insurance Co., 771 F. Supp. 2d 680, 706 (S.D. Tex. 2011) (citing Cass v. Stephens, 156 S.W.3d 38, 62 (Tex. App. — El Paso 2004) ("[a] corporate officer . . . is always primarily liable for his own torts, even though the principal is also vicariously liable. An employee may be held individually liable for an employer's tortious acts if he knowingly participates in the conduct or has knowledge of the tortious conduct, either actual or constructive.")).

As evidence that defendants cancelled the PrevMED Contract intentionally to eliminate PrevMED from the Texas market, plaintiffs cite the deposition testimony of defendant Taylor

acknowledging that OraQuest cancelled the Contract without providing proper notice,[37] and the deposition testimony of Dr. Timothy Bradbury who stated that he was summoned to a meeting with defendants Taylor and Kwauk in August of 2014, during which he was told that OraQuest was "eliminating the middleman," and he was asked "to keep it confidential."[38]  This evidence is sufficient to raise a genuine issue of material fact as to whether the alleged act of interference was willful and intentional.  Since defendants do not argue that the summary judgment record lacks evidence from which a reasonable fact-finder could conclude that cancellation of OraQuest's Contract with PrevMED caused PrevMED to suffer damages and actual loss, the court concludes that neither the corporate nor the individual defendants are entitled to summary judgment on PrevMED's claims for tortious interference with existing contracts with Texas SNFs.

(B)  Prospective Contracts

Defendants argue that they are entitled to summary judgment on PrevMED's claims for tortious interference with prospective contracts with SNFs because "there is no evidence OraQuest engaged

---

[37]Id. at 11 ¶ 9 (citing Exhibit E to Plaintiffs' Response, Oral and Videotaped Deposition of James Amos Taylor at pp. 179:20-180:2, Docket Entry No. 88-5, pp. 11-12).

[38]Id. ¶ 10 (citing Exhibit F to Plaintiffs' Response, Oral Deposition of Timothy Allen Bradbury ("Bradbury Deposition") at pp. 30:25-31:7, Docket Entry No. 88-6, pp. 11-12).

in independently tortious conduct that prevented any future relationship."[39]   Defendants argue that

> there is no evidence that OraQuest has ever interfered with PrevMED's prospective relationship with any SNF by engaging in independently tortious conduct.   What prevented PrevMED from entering into access agreements with new SNFs was the termination of the agreement with OraQuest, not some independently tortious conduct.   That, at most, is a breach of contract that no matter how willful does not amount to an independent tort.[40]

Independently tortious conduct means "conduct [that] would be actionable under a recognized tort," such as threats of physical harm or fraudulent statement.   Wal-Mart, 52 S.W.3d at 726-27. Willful breach of contract is not a tort on which a claim for tortious interference with a prospective contract can be based. See McConnell v. Coventry Health Care National Network, Civil Action No. 05-13-01365-CV, 2015 WL 4572431, at *6 (Tex. App. — Dallas July 30, 2015, pet. denied) ("[E]ven if Coventry breached the contract, it's conduct would not be independently tortious."). Because plaintiffs offer no summary judgment evidence of independently tortious conduct by defendants that prevented PrevMED from having future contractual relationships with Texas SNFs, the court concludes that defendants are entitled to summary judgment on PrevMED's claims for tortious interference with prospective contracts with Texas SNFs.

---

[39]Defendants' MSJ, Docket Entry No. 80, p. 19.

[40]Id.

-24-

### (2)   Plaintiff's Contracts with Clinicians

#### (i)   MAH and PrevMED

Plaintiffs allege that defendants intentionally, willfully, and maliciously interfered with their contracts with MAPG clinicians.  MAPG is the only plaintiff who had contracts and/or prospective contracts with clinicians providing dental services to SNF residents.  Any claim that MAH or PrevMED is asserting or attempting to assert for tortious interference with existing or prospective contracts with MAPG clinicians therefore fails because a cause of action for tortious interference with contract will not lie in the absence of an existing contract or a reasonable probability that a contract would be entered.  See Texas Disposal System Landfill, 219 S.W.3d at 588 ("A cause of action for tortious interference will not lie in the absence of a contract.").  Accordingly, the court concludes that defendants are entitled to summary judgment on claims that MAH and PrevMED are asserting for tortious interference with existing and prospective contracts with MAPG clinicians.

#### (ii)   MAPG

Quoting Lazer Spot, Inc. v. Hiring Partners, Inc., 387 S.W.3d 40, 51 (Tex. App. — Texarkana 2012, pet. denied), defendants argue that they are entitled to summary judgment on MAPG's claims for tortious interference with its existing and/or prospective contracts with clinicians because "merely inducing a contract

obligor to do what it has a right to do is not actionable interference."[41]   Asserting that the clinicians were all at-will employees defendants argue that they did not interfere with MAPG's employment relationship with the clinicians.   Id. (holding that at-will employees may be lawfully induced to do what they have a right to do).   Alternatively, defendants argue that OraQuest's actions with respect to MAPG's employees were justified because OraQuest had independent contracts with MAPG's dentists, as required by Texas law.   See Texas Insurance Code § 843.101(b).

Citing Sterner, 767 S.W.2d at 689, plaintiffs argue that "[e]ven though the agreements [that MAPG had with the clinicians] were terminable-at-will, the Defendants are nevertheless subject to a cause of action for tortious interference."[42]   While Sterner, 767 S.W.2d at 689, held that "the terminable-at-will status of a contract is no defense to an action for tortious interference with its performance," more recent Texas Supreme Court authority has held otherwise.   See ACS Investors, 943 S.W.2d at 430 ("Ordinarily, merely inducing a contract obligor to do what it has a right to do is not actionable interference.").   Courts have limited Sterner to cases involving interference alleged either to have been defamatory or to have breached an independent contract obligation.   As the court observed in Lazer Spot, 387 S.W.3d at 51, although Sterner's

---

[41]Id. at 20.

[42]Plaintiffs' Response, Docket Entry No. 88, p. 19.

holding seems to contradict the holding in <u>ACS Investors</u>, 943
S.W.2d 426, it might be distinguishable by the fact that

> Marathon's contract with Sterner's employer specifically
> yielded all managerial decisions to the employer.
> Marathon induced the employer to do what it had a right
> to do (<u>i.e.</u>, terminate at will).  In this case, however,
> Marathon breached its contract with Sterner's employer by
> making a demand that violated the terms of the Marathon-
> employer agreement.  Marathon's acts violated its
> agreement with Sterner's employer and thus exceeded its
> right to interfere with the contract between Sterner and
> his employer.

<u>Id.</u> at 51 (quoting and removing footnotes from Sean Farrell,

"Applying Tortious Interference Claims to At-Will Contracts," 39

Tex. J. Bus. L. 527, 532 (2004)).  <u>See also id.</u> at 53 ("Outside of

the realm of allegedly defamatory statements made by third parties

that result in termination of at-will employment (where inducement

is apparently tortious because it is accomplished via defamation),

other actionable interference appears to hinge on violation of a

contractual provision, other than the at-will provision.").

Defendants are correct that they could not have interfered

with the clinicians' continued employment by merely hiring them.

<u>Lazer Spot</u>, 387 S.W.3d at 53 ("[A] claim of tortious interference

cannot be premised merely on the hiring of an at-will employee,

without more.").  Plaintiffs argue, however, that defendants did

more than merely hire MAPG's at-will employees.  Plaintiffs cite

evidence showing that MAPG clinicians all signed a Memorandum of

Understanding that contained a paragraph titled "Non-Interference

with Contractual Relations" that stated:

> Upon termination of the employment with MAPG (by either
> party) I agree not to provide dental or oral hygiene
> services or to assist anyone in providing dental or oral
> hygiene services within any PrevMED contracted facilities
> or institutions for a period of one year from the date of
> termination.[43]

Plaintiffs also cite evidence showing that defendants approached several MAPG clinicians and urged them to violate this written agreement by providing dental services to PrevMED-contracted SNFs as part of a new OraQuest provider team, which the clinicians, in fact, proceeded to do.[44]   For example, dentist Dr. Nicole Ray testified that defendant Kwauk spoke to her about leaving MAPG and moving to a new provider group while she was still employed by MAPG,[45] told her that the new group would take over providing services in the SNFs in which MAPG was operating,[46] discussed the Memorandum of Understanding with her, told her that after October 1, 2014, PrevMED would no longer be contracted at any of the facilities in which she would be working in Texas,[47] and asked her to reach out to the hygienist she worked with, i.e., Deanna Duckworth Moore, about going to work for the new provider

---

[43]Memorandum of Understanding, Exhibit M to Plaintiffs' Response, Docket Entry No. 88-13, p. 3.  See also Exhibit 4 to Defendant's MSJ, Docket Entry No. 80-5.

[44]Plaintiffs' Response, Docket Entry No. 88, pp. 11-12 & nn.3-4, pp. 15-16, and 19.

[45]Deposition of Nicole W. Ray, D.D.S. ("Ray Deposition") at p. 38:1-8, Exhibit H to Plaintiffs' Response, Docket Entry No. 88-8, p. 3.

[46]Id. at 39:3-11, Docket Entry No. 88-8, p. 4.

[47]Id. at 42:1-24 and 44:2-7, Docket Entry No. 88-8, pp. 5-6.

group.[48]   Ray also testified that she and Duckworth went to work for the new provider group.[49]   Timothy Bradbury, D.D.S., similarly testified that in August of 2014 he met with defendants Kwauk and Taylor who asked him if he would "do a professional corporation and come on board with them in this endeavor."[50]   This evidence is sufficient to raise genuine issues of material fact as to whether defendants interfered with MAPG's existing contracts with its clinicians, and whether the defendants engaged in conduct that was independently tortious or unlawful in order to prevent the continuation of MAPG's contractual relationship with its clinicians.

The court concludes that the defendants are nevertheless entitled to summary judgment on MAPG's claims for tortious interference with its clinicians' existing and prospective contracts because plaintiffs have failed to cite any evidence from which a reasonable fact-finder could conclude that defendants' interference caused MAPG to suffer actual harm or damage as a result of the interference.  See Faucette, 322 S.W.3d at 914.  With respect to MAPG's damages plaintiffs state:

> As for MAPG's damages, it is a captive professional corporation formed in order to comply with various states' corporate practice of dentistry laws that prohibit the employment of dental professionals by non-dentists.  MAPG employees are solely responsible for clinical decisions for and treatment of patients assigned to them by MAH and its clients.  MAH manages all human

---

[48]_Id._ at 48:11-17, Docket Entry No. 88-8, p. 7.

[49]_Id._ at 48:1-24, Docket Entry No. 88-8, p. 7.

[50]Bradbury Deposition at p. 31:14-21, Exhibit F to Plaintiffs' Response, Docket Entry No. 88-6, p. 4.

> resource, accounting, financial, tax, and management
> processes for MAPG. Since MAPG was formed to provide
> clinical services for MAH clients, all MAPG costs are
> charged to MAH on a monthly basis. Since all costs are
> charged through to MAH, MAPG reports zero or near zero
> profit or loss.[51]

Although plaintiffs contend that MAPG's damages are reflected in MAH's damages, plaintiffs have not cited any legal authority in support of its contention that damages suffered by MAH are sufficient to establish the damage element of MAPG's claim for tortious interference with existing or prospective contracts with its clinicians. Moreover, MAPG's corporate representative testi- fied unequivocally that MAPG had not suffered and was not seeking to recover damages in this lawsuit.[52] Accordingly, the court concludes that defendants are entitled to summary judgment on MAPG's claims for tortious interference with both existing and prospective contracts with its clinicians because plaintiffs have failed to cite any evidence from which a reasonable jury could conclude that defendants' actions caused MAPG to suffer actual harm or damage as a result of the interference.

### 3.   Aiding and Abetting Breach of Fiduciary Duty

Plaintiffs allege that MAPG employees owed fiduciary duties to MAPG and its affiliates, MAH and PrevMED, and that MAPG employees breached their fiduciary duties to MAPG and its affiliates, MAH and

---

[51]Plaintiffs' Response, Docket Entry No. 88, p. 23.

[52]Garabis Deposition at p. 37:16-18, Exhibit 8 to Defendants' MSJ, Docket Entry No. 80-9, p. 4.

PrevMED, by engaging in a plan to usurp PrevMED's business opportunities and by failing to inform MAPG and/or PrevMED of defendants' intentions to terminate PrevMED's network participation and take over provision and management of dental services in PrevMED-contracted SNFs.  Plaintiffs allege that defendants are liable for aiding and abetting breach of fiduciary duty because defendants knowingly participated and offered material assistance and encouragement to MAPG employees' breach of their fiduciary duties by asking them not to disclose OraQuest's plans to terminate PrevMED's network participation and plans to take over the manage-ment and provision of dental services in PrevMED-contracted SNFs.[53]

Defendants argue that they are entitled to summary judgment on plaintiffs' claims that they aided and abetted breaches of fiduciary duty committed by MAPG employees because there is no evidence that MAPG employees owed a fiduciary duty to MAH or to PrevMED, and no evidence that MAPG employees breached fiduciary duties owed to MAPG.[54]  Citing <u>Abetter Trucking Co. v. Arizpe</u>, 113 S.W.3d 503, 510 (Tex. App. — Houston [1st Dist. 2003, no pet.), and asserting that MAPG's employees were all at-will employees, defendants argue that MAPG's employees "had no duty to disclose their plans (or OraQuest's plans) to PrevMED or MAPG."[55]

---

[53]Plaintiff's First Amended Complaint, Docket Entry No. 14, p. 31 ¶¶ 68-71.

[54]Defendants' MSJ, Docket Entry No. 80, pp. 16-17.

[55]<u>Id.</u> at 17.

    (a)  Applicable Law

Plaintiffs' aiding and abetting claims require proof that defendants acted with unlawful intent to give substantial assistance and encouragement to a wrongdoer in a tortious act. West Fork Advisors, L.L.C. v. SunGard Consulting Services, LLC, 437 S.W.3d 917, 921 (Tex. App. — Dallas 2014, pet. denied) (citing Juhl v. Airington, 936 S.W.2d 640, 644 (Tex. 1996)). The Texas Supreme Court has specifically dealt with aiding and abetting as a dependent claim premised on an underlying tort. Id. (citing Ernst & Young, L.L.P. v. Pacific Mutual Life Ins. Co., 51 S.W.3d 573, 582-83 (Tex. 2001)). See also Tilton v. Marshall, 925 S.W.2d 672, 681 (Tex. 1996) (recognizing that in order to show that defendants are liable for aiding and abetting plaintiffs must first prove an underlying tort). Acknowledging the derivative nature of their aiding and abetting claims, plaintiffs argue that MAPG clinicians breached fiduciary duties owed to their employer, MAPG, and its affiliates, MAH and PrevMED, by engaging in a plan to usurp PrevMED's business opportunities, and by failing to inform MAPG and/or PrevMED of defendants' intentions to terminate PrevMED's network participation and to take over provision and management of dental services in PrevMED-contracted SNFs.[56]

---

[56]Plaintiffs' Response, Docket Entry No. 88, p. 14 (stating, "obviously, '[p]roof of a breach of fiduciary duty is required to maintain a claim of aiding and abetting a breach of fiduciary duty.'").

Texas law recognizes the existence of fiduciary duty "where a special confidence is reposed in another who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." Texas Bank and Trust Co. v. Moore, 595 S.W.2d 502, 507 (Tex. 1980). Fiduciary duty flows from the relationship between the parties, rather than from the terms of any contract between them. Cambridge Oil Co. v. Huggins, 765 S.W.2d 540, 544 (Tex. Civ. App. — Corpus Christi 1989, writ denied) (citing Manges v. Guerra, 673 S.W.2d 180, 183 (Tex. 1984)). See also Crim Truck & Tractor Corp. v. Navistar International Transportation Corp., 823 S.W.2d 591, 595 (Tex. 1992) ("Every contract includes an element of confidence and trust that each party will faithfully perform his obligation under the contract. Neither is the fact that the relationship has been a cordial one, of long duration, evidence of a confidential relationship."). Certain formal relationships, such as that between attorney and client, entail fiduciary duty as a matter of law. Texas Bank and Trust, 595 S.W.2d at 507; Crim Truck, 823 S.W.2d at 595. By contrast, the element of confidence and trust inherent in every arms-length business arrangement does not. Crim Truck, 823 S.W.2d at 594-95. Between these poles, no clear rule emerges. Texas Bank and Trust, 595 S.W.2d at 508.

Texas courts have long recognized, however, that an employee has a fiduciary duty to act primarily for the benefit of his employer in matters connected with his employment. Abetter

-33-

_Trucking_, 113 S.W.3d at 510 ("When a fiduciary relationship of agency exists between employee and employer, the employee has a duty to act primarily for the benefit of the employer in matters connected with his agency.") (citing _Johnson v. Brewer & Pritchard, P.C._, 73 S.W.3d 193, 201 (Tex. 2002)). An employee may not (1) appropriate the company's trade secrets; (2) solicit the former employer's customers while still working for his employer; (3) solicit the departure of other employees while still working for his employer; or (4) carry away confidential information. _Id._ at 512. The basis for liability for breach of an employee's duty is, however, limited as it is "tempered by society's legitimate interest in encouraging competition." _Wooters v. Unitech International, Inc._, ____ S.W.3d ____, 2017 WL 372165, *7 (Tex. App. — Houston [1st Dist.] January 26, 2017, no pet.) (citing _Johnson_, 73 S.W.3d at 201). Thus, "[a]n at-will employee may properly plan to go into competition with his employer and may take active steps to do so while still employed and may secretly do so with other employees, without disclosing his plans to his employer." _Id._ _See also_ _Abetter Trucking_, 113 S.W.3d at 511. "An employee also may use his general skills and knowledge obtained through employment to compete with the former employer." _Id._ (citing _Sharma v. Vinmar International, Ltd._, 231 S.W.3d 405, 424 (Tex. App. — Houston [14th Dist.] 2007, no pet.)). Thus, an employee's duty to his employer does not require an employee to disclose his plans to compete; he may secretly join with other

employees to plan a competing company without violating any duty to his employer. <u>Abetter Trucking</u>, 113 S.W.3d at 511.

    (b)   Application of the Law to the Facts

As evidence that MAPG employees breached fiduciary duties to their employer, MAPG, and its affiliates, MAH and PrevMED, plaintiffs cite the Memorandum of Understanding that all MAGP clinicians signed, in which they acknowledged that by accepting employment with MAPG, the clinician owed fiduciary duties to MAPG, including the obligation to promote the best interests of MAPG and its affiliates, MAH and PrevMED, and agreed not to provide dental or oral hygiene services or to assist anyone in providing dental or oral hygiene services to any PrevMED-contracted SNF for a period of one year following separation from MAPG.[57]   Plaintiffs cite the deposition testimony of Drs. Ray and Bradbury as evidence that the dentists failed to disclose OraQuest's intent to form a competing clinical service provider, terminate MAPG from OraQuest's provider network, hire MAPG clinicians to work for the competing service provider, and service MAPG's patients.[58]   Plaintiffs cite Ray's statement that Kwauk asked her to reach out to the hygienist with

---

    [57]Plaintiffs' Response, Docket Entry No. 88, p. 15 (citing Clinician contracts with MAPG, Exhibit M to Plaintiffs' Response, Docket Entry No. 88-13).

    [58]<u>Id.</u> (citing Exhibit F to Plaintiffs' Response, Bradbury Deposition at pp. 30:1-32:8, Docket Entry No. 88-6, pp. 3-5; and Exhibit H to Plaintiffs' Response, Ray Deposition at pp. 38:3-39:11, Docket Entry No. 88-8, pp. 3-4).

whom she was working, that she did, and that she and her hygienist did go to work for the new provider as evidence that Ray breached her fiduciary duty to MAPG by persuading other clinicians to join the competing service provider.[59]

While Ray and Bradbury's formulation of plans to join a competing service provider may have violated contractual duties that they had assumed by signing the Memorandum of Understanding, neither Bradbury nor Ray violated their fiduciary duty by formulating plans to compete. Plaintiffs fail to cite any evidence from which a reasonable fact-finder could conclude that Bradbury, Ray, or any other MAPG clinician engaged in actions that would constitute breach of a fiduciary duty to their employer, i.e., evidence that any MAPG clinician appropriated MAPG's trade secrets, solicited MAPG's customers while still working for MAPG, solicited the departure of other employees while still working for MAPG, or carried away confidential information.

Although plaintiffs cite Ray's statement that Kwauk asked her to reach out to the hygienist with whom she was working, that she did reach out to her hygienist, and that she and her hygienist did go to work for the new provider, plaintiffs fail to cite any evidence showing that Ray solicited her hygienist to work for the new service provider while she was still working for MAPG.

_____

[59]<u>Id.</u> at 16 (citing Exhibit H to Plaintiffs' Response, Ray Deposition at p. 48:11-24, Docket Entry No. 88-8, p. 7).

*Ameristar Jet Charter, Inc. v. Cobbs*, 184 S.W.3d 369, 374 (Tex. App. — Dallas 2006, no pet.) (holding there was no breach of fiduciary duty when employee formed competing business while employed but did not compete with employer until he resigned); *Abetter Trucking*, 113 S.W.3d at 510 (explaining that employee secretly joined with other employees to make plans for forming competing business without violating any duty to employer).

Because a defendant's liability for aiding and abetting depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable, *West Fork*, 437 S.W.3d at 921, because plaintiffs' aiding and abetting claim is based on allegations that defendants aided and abetted breaches of fiduciary duties owed by MAPG employees to MAPG and its affiliates, MAH and PrevMED, and because plaintiffs have failed to cite evidence from which a reasonable fact-finder could conclude that MAPG employees breached fiduciary duties owed to MAPG or its affiliates, the court concludes that defendants are entitled to summary judgment on plaintiffs' claims for aiding and abetting breach of fiduciary duty.

### 4. Civil Conspiracy

Plaintiffs allege that defendants combined and knowingly participated in the breaches of the fiduciary duties committed by MAPG's clinicians; that defendants knowingly participated with others to terminate PrevMED without adequate notice, to retain

monies owed to PrevMED, and to make false and misleading
representations of fact likely to cause confusion regarding
defendants' affiliation with PrevMED; that all defendants committed
overt acts in furtherance of the unlawful objective of their
conspiracy; and as a result plaintiffs have suffered damages.[60]
Defendants argue that plaintiffs' conspiracy claims fail because
plaintiffs have failed to present evidence capable of proving that
any MAPG employee breached fiduciary duties owed to MAPG or its
affiliates, MAH and PrevMED, and because conspiracy to commit
breach of contract is not a viable claim.[61]

    (a)  Applicable Law

"An actionable civil conspiracy is a combination by two or
more persons to accomplish an unlawful purpose or to accomplish a
lawful purpose by unlawful means." Massey v. Armco Steel Co., 652
S.W.2d 932, 934 (Tex. 1983). See also West Fork, 437 S.W.3d at 920
(citing Tilton, 925 S.W.2d at 681). The essential elements of a
civil conspiracy claim are: "(1) a combination of two or more
persons; (2) an object to be accomplished (an unlawful purpose or
a lawful purpose by unlawful means); (3) a meeting of minds on the
object or course of action; (4) one or more unlawful, overt acts;
and (5) damages as the proximate result." M-I LLC v. Stelly, 733

---

[60]Plaintiff's First Amended Complaint, Docket Entry No. 14,
p. 36 ¶¶ 108-112.

[61]Defendants' MSJ, Docket Entry No. 80, pp. 15-17.

F. Supp. 2d 759, 791 (S.D. Tex. 2010) (citing <u>Insurance Co. of North America v. Morris</u>, 981 S.W.2d 667, 675 (Tex. 1998)). "[A] defendants' liability for [civil] conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." <u>Tilton</u>, 925 S.W.2d at 681. Thus, like aiding and abetting, conspiracy is a derivative tort. <u>Homoki v. Conversion Services, Inc.</u>, 717 F.3d 388, 402 (5th Cir. 2013).

> (b)   Application of the Law to the Facts

Recognizing that "[r]ecovery for civil conspiracy is not based on the conspiracy but on the underlying tort,"[62] plaintiffs argue that defendants are not entitled to summary judgment because plaintiffs have presented evidence sufficient to raise genuine issues of material fact as to "the Defendants' and certain MAPG clinicians' united goal of 'cutting out the middle man,' and seizing Plaintiffs' business in Texas."[63]   As evidence of the alleged conspiracy, plaintiffs point to the deposition of Dr. Bradbury who testified that Kwauk and Taylor asked him to meet with them in August of 2014 and at the meeting announced to him "that they were, quote/unquote, eliminating the middleman and that they . . . asked [him] to keep it confidential."[64]   Plaintiffs also point to the

---

[62]Plaintiffs' Response, Docket Entry No. 88, p. 17.

[63]<u>Id.</u> at 18.

[64]<u>Id.</u> at 17 (citing Exhibit F to Plaintiffs' Response, Bradbury Deposition at pp. 30:25-31:7, Docket Entry No. 88-6, pp. 3-4).

deposition of Dr. Ray who testified that she, too, had conversations

with Kwauk about creation of a new service provider that Kwauk asked

her to keep confidential.[65]  Citing a September 30, 2014, email from

SNF administrator Georgia Lee, plaintiffs argue that

> the Defendants and Dr. Patel made misleading
> representations to the SNFs to secure their business
> . . . The Defendants successfully scheduled a meeting
> with an SNF representative by representing that they were
> the same company as PrevMED[,] (Ex. P.)[, but w]hen the
> representative learned that the Defendants were not
> PrevMED, the administrator attempted to cancel the
> meeting.[66]

Missing from plaintiffs' briefing is any explanation for how or why

this evidence is sufficient to raise genuine issues of fact for

trial regarding their claim for conspiracy.

In order to plead and prove a claim for civil conspiracy, a

plaintiff must adequately plead and prove an underlying tort.

Homoki, 717 F.3d at 402 (citing Meadows v. Hartford Life Ins. Co.,

492 F.3d 634, 640 (5th Cir. 2007) ("If a plaintiff fails to state

a separate claim on which the court may grant relief, then the

claim for civil conspiracy necessarily fails."). See also Amazon

Tours, Inc. v. Quest Global Angling Adventures L.L.C., Civil Action

No. 3:03cv2551-M, 2004 WL 1788078 at *4, (N.D. Tex. June 30, 2004)

(holding that catch-all "incorporation by reference" statement in

the civil conspiracy section of a complaint did not give defendants

---

[65]Id. (citing Exhibit H to Plaintiffs' Response, Ray Deposition
at p. 38:3-22, Docket Entry No. 88-8, p. 3).

[66]Id. (citing Exhibit P to Plaintiffs' Response, Docket Entry
No. 88-16).

fair notice that any of the other torts listed in the complaint were the underlying tort). In Plaintiffs' First Amended Complaint they allege that "Defendants combined and knowingly participated with Patel and others in the breach of the fiduciary duties by Patel and others,"[67] and that "Defendants also combined and knowingly participated with Patel and others to terminate PrevMED without adequate notice, to retain monies owed to PrevMED, and to make false and misleading representations of fact likely to cause confusion regarding Defendants' affiliation with PrevMED."[68] These allegations indicate that plaintiffs' conspiracy claims are based on an alleged breach of fiduciary duty by Patel and others, on defendants' decision to terminate PrevMED without adequate notice, and on allegedly false and misleading representations of fact. Neither these allegations nor the proof that plaintiffs cite is sufficient to support a claim for civil conspiracy.

Plaintiffs have neither alleged a claim for breach of fiduciary duty against Dr. Patel or any other MAPG clinician, nor cited any evidence capable of proving that Dr. Patel or any MAPG clinician breached a fiduciary duty owed to MAPG or its affiliates. The only evidence that plaintiffs have submitted regarding Dr. Patel is an August 28, 2014, email from Kwauk to Taylor stating, "Dr. Patel is on board. He understands the risk and he's been consulting his

---

[67]Plaintiffs' First Amended Complaint, Docket Entry No. 14, p. 36 ¶ 108.

[68]Id. ¶ 109.

-41-

attorney.  He is going to set up a PC and enter into a management services agreement with us."[69]  The elements of a breach of fiduciary duty claim under Texas law are:  (1) a fiduciary relationship existed between the plaintiff and defendant; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant.  Homoki, 717 F.3d at 402-03.  The August 28, 2014, email does not show that Dr. Patel had a fiduciary relationship with any plaintiff, that he breached fiduciary duties owed to the plaintiffs, or that his breach injured the plaintiffs or benefitted any defendant.  Moreover, for the reasons stated in § II.B.3, above, the court has already concluded that plaintiffs have failed to cite evidence capable of establishing that any other MAPG clinician breached fiduciary duties owed to MAPG or its affiliates.

Plaintiffs' allegations that defendants conspired with Patel and others to terminate PrevMED without adequate notice are based on PrevMED's breach of contract claim that arises from OraQuest's alleged cancellation of its Contract with PrevMED in violation of the Contract's termination provision, which required written notice sixty (60) days in advance.[70]  "Texas law does not recognize a claim for conspiracy to breach a contract."  Exxon Mobil Corp. v. Starr Indemnity & Liability Insurance Co., 181 F. Supp. 3d 347, 363 (S.D. Tex. 2015) (citing Grizzle v. Texas Commerce Bank, N.A., 38 S.W.3d

---

[69]August 28, 2014, Email from Paul Kwauk to Jim Taylor, Exhibit G to Plaintiffs' Response, Docket Entry No. 88-7.

[70]Plaintiffs' First Amended Complaint, Docket Entry No. 14, p. 4 ¶ 8.

265, 285 (Tex. App. — Dallas 2001, pet. granted), rev'd in part on other grounds by Texas Commerce Bank, N.A. v. Grizzle, 96 S.W.3d 240 (Tex. 2002)).

Plaintiffs' reference to false and misleading facts as a basis on which to support a conspiracy claim fails because the claims that plaintiffs assert based on defendants' alleged use of false and misleading statements, i.e., claims for violations of the Lanham Act, misappropriation, and passing off, are all subject to dismissal for failure to cite evidence capable of raising genuine issues of material fact. See §§ II.B.5-7, below.

Accordingly, the court concludes that defendants are entitled to summary judgment on plaintiffs' claims for civil conspiracy.

### 5.   Violation of the Lanham Act, 15 U.S.C. § 1125

Plaintiffs allege that all defendants violated the Lanham Act, 15 U.S.C. § 1125, by making false and misleading descriptions and representations of fact, which were intended to, likely to, and did in fact cause confusion, cause mistake, and deceive as to the affiliation, connection, and association between plaintiffs and defendants by misrepresenting the nature, characteristics, and qualities of their services and commercial activities, and by making unauthorized use of the PrevMED and Mid America names with intent to influence purchasing decisions by SNFs and the responsible parties of SNF patients.[71]

---

[71]Id. at 32-33 ¶¶ 74-83.

Defendants argue that they are entitled to summary judgment on plaintiffs' Lanham Act claims because plaintiffs are not able to cite evidence capable of establishing any element of such a claim.[72] Plaintiffs respond by asserting that

> [i]n an email that went out to all administrators of PrevMED-contracted SNFs prior to the termination of the Contract, the Defendants informed the SNFs that "everything is going to stay the same except that from now on, you will have to deal with only one company for all of your dental needs" and that "[y]our residents will continue to receive their dental care from the same providers." (Ex. U.) When told by an administrator that a SNF wanted to cancel all of the policies due to the split with PrevMED, the Defendants responded by stating that it wanted to "provide clarification" and "assure you that there is going to be no disruption in providing services to your residents . . ." (*Id.*) Another SNF administrator responded stating, "I did not understand that your company is a completely different company than PrevMED," and OraQuest replied stating that "I'm sorry if there was a misunderstanding . . . [t]he discontinuing of the partnership does not change the services and service providers that your residents have." (Ex. P.)[73]

Citing <u>Reed Construction Data Inc. v. McGraw-Hill Companies, Inc.</u>, 49 F. Supp. 3d 385, 416 (S.D.N.Y. 2014), plaintiffs argue that "[u]nder the Lanham Act, there is not a hard-and-fast rule governing the number of individuals whom must be misled to support a cause of action. . . Here, it is clear that several SNFs were misled."[74]

    (a)   Applicable Law

Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125, provides in relevant part:

-----

[72]Defendants' MSJ, Docket Entry No. 80, p. 22.

[73]Plaintiffs' Response, Docket Entry No. 88, pp. 24-25.

[74]<u>Id.</u> at 25.

> Any person who . . . in commercial advertising or
> promotion, misrepresents the nature, characteristics,
> qualities, or geographic origin of his or her or another
> person's goods, services, or commercial activities, shall
> be liable in a civil action by any person who believes
> that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B) (West 1999).   The Fifth Circuit has
interpreted this section of the Lanham Act as providing "protection
against a 'myriad of deceptive commercial practices,' including
false advertising or promotion." Pizza Hut, Inc. v. Papa John's
International, Inc., 227 F.3d 489, 495 (5th Cir. 2000), cert.
denied, 121 S. Ct. 1355 (2001) (citing Seven-Up Co. v. Coca-Cola
Co., 86 F.3d 1379, 1387 (5th Cir. 1996)).   The Lanham Act was
intended to protect persons participating in commerce against
unfair competition. See Dastar Corp. v. Twentieth Century Fox Film
Corp., 123 S. Ct. 2041 [29] (2003) (recognizing that while the
Lanham Act primarily focuses on the registration and infringement
of trademarks, Section 43(a) also provides protections against
unfair competition).   As such, Section 43(a) provides a remedy
against those who use in commerce a "false designation of origin,
false or misleading description of fact, or false or misleading
representation of fact." 15 U.S.C. § 1125 (1999).   The Fifth
Circuit, along with many others, holds that § 43 of the Lanham Act
is broad enough to encompass passing off.   See Bangor Punta
Operations, Inc. v. Universal Marine Co., Ltd., 543 F.2d 1107, 1109
(5th Cir. 1976).   See also Dastar, 123 S. Ct. 2041 [30] (noting
that the Fifth Circuit, among many others, recognizes a claim of
passing off).   McArdle v. Mattel Inc., 456 F. Supp. 2d 769, 783

(E.D. Tex. 2006).   Unfair competition is almost universally regarded as a question of whether the defendant is passing off his goods or services as those of the plaintiff by virtue of substantial similarity between the two, leading to confusion on the part of potential customers.   Volkswagenwerk Aktiengesellschaft v. Rickard, 492 F.2d 474, 478 (5th Cir. 1974).

In Pizza Hut, the case cited by both plaintiffs and defendants for its statement of the elements of a Lanham Act claim, the Fifth Circuit held that establishing a prima facie case required plaintiffs to show:

> (1) A false or misleading statement of fact about a product;
>
> (2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers;
>
> (3) The deception is material, in that it is likely to influence the consumer's purchasing decision;
>
> (4) The product is in interstate commerce; and
>
> (5) The plaintiff has been or is likely to be injured as a result of the statement at issue.

227 F.3d at 495 (citing Taquino v. Teledyne Monarch Rubber, 893 F.2d 1488, 1500 (5th Cir. 1990)).   The failure to present evidence capable of establishing the existence of any element of the prima facie case is fatal to the plaintiffs' claim.   Id.

(b)   Application of the Law to the Facts

Defendants argue that plaintiffs have failed to satisfy the first element of their Lanham Act claim because

there was no false statement or actual deception.  Rather
than trying to pass of[f] the services performed under
the OraQuest policy as PrevMED's following the
termination, OraQuest actually tried to distance itself
as far as possible from the PrevMED brand (because
PrevMED had been misrepresenting the policy).   When
OraQuest terminated PrevMED, OraQuest sent a letter to
each SNF and insured, expressly stating that it had
"discontinued its partnership with PrevMED, Inc." and
assured them that the "PrevMED™ Oral Health Maintenance®
Plan will no longer be associated with the OraQuest
Policy."[75]

The only evidence of false and/or misleading statements of

fact that plaintiffs cite is the following statement that

plaintiffs assert was "in an email that went out to all

administrators of PrevMED-contracted SNFs prior to the termination

of the Contract:"[76]  "'[E]verything is going to stay the same except

that from now on, you will have to deal with only one company for

all of your dental needs' and that '[y]our residents will continue

to receive their dental care from the same providers.'"[77]  Although

plaintiffs assert that these statements are evidenced by Exhibit U

to their brief in opposition, which is a chain of emails between

OraQuest's Andrea Suarez and Ginger Whitley, administrator at Texan

Nursing & Rehab of Gonzales, Texas, dating from October 2 to

October 15, 2014, these statements are actually found in Exhibit O,

a draft email that defendant Kwauk sent to two other OraQuest

---

[75]Defendants' MSJ, Docket Entry No. 80, p. 22 (citing Exhibit 6
thereto, Docket Entry No. 80-7).

[76]Plaintiffs' Response, Docket Entry No. 88, pp. 24-25.

[77]Id.

-47-

employees, Danielle Geuvara and Andrea Suarez.  Plaintiffs have not
cited any evidence showing that either the draft email or the
statements therein that plaintiffs contend were false and/or
misleading were, in fact, sent to or received by any SNF
administrator.

As evidence that OraQuest made statements of fact that
deceived SNF administrators, plaintiffs cite emails between
OraQuest and two SNF administrators, Georgia Lee and Ginger
Whitley.[78]  Plaintiffs' evidence shows that on September 30, 2014,
Georgia Lee, LMSW, wrote to Guevara at OraQuest stating:  "I did
not understand that your company is a completely different company
than PrevMED.  I am happy with our hygienist and would hate to lose
her.  At this time I would like to cancel our meeting."[79]  Guevara
replied:

> I'm sorry if there was a misunderstanding.  Let me
> clarify:
>
> While we are different than PrevMED the dentist and
> hygienist that was working under PrevMed will now be
> working for us.
>
> The discontinuing of the partnership does not change the
> services and service providers that your residents have.

---

[78]Id. at 25 (citing September 30, 2014, email from Danielle
Guevara to Georgia Lee, Exhibit P to Plaintiffs' Response, Docket
Entry No. 88-16, and October 15, 2014, email from Andrea Suarez to
Ginger Whitley, Exhibit U to Plaintiffs' Response, Docket Entry
No. 88-21).

[79]September 30, 2014, email from Danielle Guevara to Georgia
Lee, Exhibit P to Plaintiffs' Response, Docket Entry No. 88-16,
p. 3.

Please reconsider our meeting as you will NOT be losing your hygienist.

The hygienist is just working for us now. :)[80]

The emails exchanged by Lee and Guevara show that — while Lee initially misunderstood that OraQuest and PrevMED were separate companies — Guevara's email clarified that fact.  The emails do not support plaintiffs' contention that OraQuest made statements of fact that were false or misleading or that Lee was, in fact, deceived.  On the contrary, these emails show that OraQuest worked to make sure that SNF administrators understood not only that OraQuest and PrevMED were wholly separate companies, but also that the partnership between OraQuest and PrevMED was ending.

Plaintiffs' evidence also shows that on October 2, 2014, Whitley, an SNF administrator at Texan Nursing & Rehab in Gonzales, Texas, wrote to Rhonda Johnson at OraQuest stating:  "This is to inform you that Texan Nursing and Rehab of Gonzales is cancelling OraQuest Dental Plans, starting October 1, 2014."[81]   Johnson responded to Whitley that her termination request was not acceptable to terminate individual policies that OraQuest had with SNF residents.[82]  Whitley replied to Johnson by asking for copies of the individual policies.[83]  On October 15, 2014, Johnson sent

---

[80]Id. at 2.

[81]October 15, 2014, email from Andrea Suarez to Ginger Whitley, Exhibit U to Plaintiffs' Response, Docket Entry No. 88-21, p. 4.

[82]Id. at 3.

[83]Id.

Whitley a list of all the residents who were then enrolled in the OraQuest Dental Insurance Plan.[84]  Whitley wrote back the same day stating, "[A]s per my original email, all residents from Texan Nursing and Rehab are cancelling policies effective October 1.  Due to short notice of your cancellation with PrevMed, the facility has had no other choice but to seek an alternate dental provider."[85]  Later that day, OraQuest's Andrea Suarez wrote to Whitley stating:

> I would like to provide clarification regarding the letter that you received from PrevMED.  Yes, we discontinued our partnership with PrevMED primarily for the benefit of your residents.  Through this change, your residents will be receiving dental care according to the benefits they are entitled to under our policy.  There is going to be a new dental service provider (NuhDent) who is committed to excellent and high quality dental care.  Furthermore, Dr. Bradbury, who has been the treating dentist in your facility previously, is planning to visit Texan Nursing & Rhab later this month.  I would like to assure you that there is going to be no disruption in providing services to your residents unlike what PrevMED represented in its letter.  I am available to answer any of your questions or concerns regarding the transition and/or any questions regarding our policy.[86]

These emails between OraQuest's Suarez and SNF administrator Whitley show that OraQuest worked to make sure Whitley understood not only that OraQuest and PrevMED were wholly separate companies, but also that the partnership between OraQuest and PrevMED was ending.  Moreover, plaintiffs have not cited any evidence capable of establishing that OraQuest's statements that the same providers

---

[84] <u>Id.</u> at 2-3.

[85] <u>Id.</u> at 2.

[86] <u>Id.</u>

would be servicing these SNFs were not true.  Accordingly, the court concludes that plaintiffs have failed to cite any evidence capable of proving either the first or second elements of their Lanham Act claim, i.e., that defendants made a false or misleading statement of fact about a product, or that such statement either deceived or had the capacity to deceive a substantial segment of potential consumers.  Nor have plaintiffs presented any evidence capable of establishing any of the other elements of their Lanham Act claims, i.e., that any deception was material in that it was likely to influence the consumer's purchasing decision; that the product at issue was in interstate commerce; or that plaintiffs have been injured as a result of the statement(s) at issue.  Accordingly, the court concludes that defendants are entitled to summary judgment on plaintiffs' Lanham Act claims.

### 6.   Common Law "Passing Off" Claims

Plaintiffs allege that defendants passed off their services as those of the plaintiffs by virtue of a substantial similarity between the two, leading to confusion on the part of consumers and potential consumers.[87]  Asserting that plaintiffs' common law claims of "passing off" require proof of effectively the same elements as their Lanham Act claims, defendants argue that they are entitled to summary judgment on these claims for essentially the same reasons

_____

[87]Plaintiff's First Amended Complaint, Docket Entry No. 14, p. 35 ¶¶ 99-100.

that they are entitled to summary judgment on plaintiffs' Lanham Act claim.[88]

(a)   Applicable Law

"To establish 'passing off' under Texas common law, a plaintiff must allege:  1) that the defendant is passing off his goods or services as those of the plaintiff by virtue of a substantial similarity between the two; and 2) that this will likely lead to confusion on the part of potential customers.  Sefton v. Jew, 201 F. Supp. 2d 730, 748-49 (W.D. Tex. 2001) (citing Playboy Enterprises, Inc. v. Webbworld, Inc., 991 F. Supp. 543, 557 (N.D. Tex. 1997)).  See also Volkswagenwerk Aktiengesellschaft v. Rickard, 492 F.2d at 478; Line Enterprises, Inc. v. Hooks & Matteson Enterprise, Inc., 659 S.W.2d 113, 117 (Tex. App. — Amarillo 1983, no writ).  Under Texas law "[t]he plaintiff need not prove the defendant intended to deceive customers or that customers were in fact deceived. . . Instead, it is sufficient to show that deception will naturally and probably result from the operation or that the public is likely to be deceived or confused."  Webbworld, 991 F. Supp. at 557 (citing Line Enterprises, 659 S.W.2d at 117).

(b)   Application of the Law to the Facts

Plaintiffs argue that defendants are not entitled to summary judgment on their common law passing off claim because

_____

[88]Defendants' MSJ, Docket Entry No. 80, p. 21.

> [i]n its communications with SNFs, the Defendants made
> numerous statements purporting to pass off Plaintiffs'
> services as their own.  (Ex. U.)  "The whole basis of the
> law of 'unfair competition' . . . is that no one shall
> sell his goods in such a way as to make it appear that
> they come from some other source."  Chevron Chemical Co.
> v. Voluntary Purchasing Groups, Inc., 659 F.2d 695, 701
> (5th Cir. 1981).   In an email that went out to all
> administrators of PrevMED-contracted SNFs prior to the
> termination of the Contract, the Defendants informed the
> SNFs that "everything is going to stay the same except
> that from now on, you will have to deal with only on[e]
> company for all of your dental needs" and that "[y]our
> residents will continue to receive their dental care from
> the same providers."  (Ex. O.)[89]

Exhibit O is a September 26, 2014, email from Kwauk to OraQuest

employees, Danielle Guevara and Andrea Suarez, with a subject line

stating, "Draft Email."[90]  Plaintiffs have not cited any evidence

from which a reasonable fact-finder could conclude that this draft

email was actually sent to or received by SNF administrators.

Moreover, for the reasons stated in § II.B.5, above, the court has

already concluded that the communications that OraQuest did send to

SNF administrators do not constitute evidence from which reasonable

jurors could conclude either that defendants were passing off

OraQuest's goods or services as those of the plaintiffs, or that

OraQuest's communications to SNF administrators were likely to lead

to confusion on the part of potential customers as required to

establish a claim for passing off under Texas law.  See Sefton, 201

---

[89]Plaintiffs' Response, Docket Entry No. 88, pp. 26-27 (citing
Exhibit O, Docket Entry No. 88-15).

[90]September 26, 2014, email from Paul Kwauk to Danielle
Guevara, Exhibit O to Plaintiffs' Response, Docket Entry No. 88-15.

F. Supp. 2d at 748-49.  Accordingly, for essentially the same reasons that the court has already concluded that defendants are entitled to summary judgment on plaintiffs' claims for violation of the Lanham Act, the court concludes that defendants are entitled to summary judgment on plaintiffs' Texas law claims for passing off.

### 7.  Misappropriation

Plaintiffs allege that they developed the PrevMED and Mid America names, the MAPG service system, and the PrevMED marketing materials through extensive time, labor, skill, and money; that defendants used the PrevMED and Mid America names, the MAPG service system, and the PrevMED marketing materials in order to compete with or eliminate plaintiffs from the Texas market, thereby gaining a special advantage in competition; and that defendants bore none of the expense incurred by the plaintiffs in developing these valuable assets.[91]

Defendants argue that plaintiffs' common law misappropriation claims fail because while Texas law recognizes claims for two theories of misappropriation — misappropriation of an individual's name or likeness, which amounts to an invasion of privacy, and misappropriation of a product created through extensive time, labor, skill, and money — plaintiffs' misappropriation claims fail under either theory.  Citing Express One International v. Steinbeck, 53

---

[91]Plaintiff's First Amended Complaint, Docket Entry No. 14, pp. 35-36 ¶¶ 103-104.

S.W.3d 895, 900 (Tex. App. — Dallas 2001, no pet.), defendants argue that plaintiffs' claims that defendants misappropriated PrevMED's and Mid America's names fail because "[t]his type of misappropriation does not apply to corporations."[92]  Citing U.S. Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc., 865 S.W.2d 214, 219 (Tex. App. — Waco 1993, writ denied).  Defendants argue that plaintiffs' claims that they misappropriated the MAPG service system fail because the MAPG service system is not a work product in which plaintiffs have a protectable property interest.

Plaintiffs do not dispute defendants' contention that they are unable to establish claims for alleged misappropriation of the PrevMED and Mid America names.  Instead, citing U.S. Sporting Products, 865 S.W.2d at 219, plaintiffs argue that the defendants misappropriated their "way of practicing dentistry in SNFs."[93] Plaintiffs explain that

> on June 17, 2014, the Defendants contacted PrevMED and requested all clinical data and all customer services statistics.  (Ex. V.)  In July 2014, the Defendants arranged a meeting with Dr. Timothy Bradbury in order to "check out [his] portable dental unite [sic]."  (Ex. W.) Around that same time, on July 16, 2014, the Defendants requested detailed information regarding all locations that the clinicians were servicing.  Kwauk requested a list of which dentist was assigned to each facility. (Ex. X.)  On August 5, 2014, Kwauk requested a list of MAPG's hygienists by region.  (Ex. Y)  On August 13, 2014, Kwauk requested that his assistant, Andrew Suarez, obtain for him some of PrevMED's marketing materials.

---

[92]Defendants' MSJ, Docket Entry No. 80, p. 23.

[93]Plaintiffs' Response, Docket Entry No. 88, p. 28.

>(Ex. Z.)  Finally, on September 26, 2014, three days
>prior to OraQuest's notification that it intended to
>terminate the Contract, Kwauk asked his assistant to "get
>as much info as possible and as early as possible."
>(Ex. AA.)[94]

Missing from plaintiffs' briefing is any evidence that PrevMED provided any of the information that OraQuest requested in June, July, or August of 2014, or that any the requested information was confidential.  Nevertheless, plaintiffs argue that "MAH lost its Texas business and has not been able to provide services in Texas since then.  As such, MAH, and by extension MAPG, experienced commercial damage as a result of OraQuest's misappropriation."[95]

The objective of the tort of misappropriation in this context, i.e., the context of unfair competition, is to "protect the labor — the so-called 'sweat equity' — that goes into creating a work" or product.  Alcatel USA, Inc. v. DGI Technologies, Inc., 166 F.3d 772, 788 (5th Cir. 1999).  In U.S. Sporting Products, 865 S.W.2d at 216, a business sold recordings of animal sounds that it had obtained either by venturing into the animals' natural habitats or by capturing the animals — a "labor intensive" process.  The defendant then purchased and copied the recordings, selling its "new" product in direct competition with the plaintiff.  Id.  The court of appeals held the defendant liable for misappropriation, based on the following elements of the tort:

---

[94] Id.

[95] Id.

> (i) the creation of plaintiff's product through extensive time, labor, skill and money, (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a "free ride") because defendant is burdened with little or none of the expense incurred by the plaintiff, and (iii) commercial damage to the plaintiff.

Id. at 218.  See also Alcatel USA, 166 F.3d at 788.

"The first element requires the expenditure of extensive time, labor, skill, and money to manufacture a product, which need not be tangible, but must provide some commercial advantage." In re TXCO Resources, Inc., 475 B.R. 781, 836 (W.D. Tex. 2012).  Thus, Texas courts have upheld misappropriation claims in a variety of situations where the plaintiff invested significant time and energy into the development of an intangible product.  See U.S. Sporting Products, 865 S.W.2d at 217-18 (animal sound recordings); Gilmore v. Sammons, 269 S.W. 861, 863 (Tex. App. — Dallas 1925, writ ref'd) (news items).  Plaintiffs have neither alleged nor cited any authority in support of their contention that their "way of practicing dentistry in SNFs" constitutes either a saleable product or a product that provides some commercial advantage.  The undisputed summary judgment evidence establishes that plaintiffs' actual product is not their "way of practicing dentistry in SNFs" but, instead, the provision of dental services to SNF residents.  Nor have plaintiffs cited any evidence capable of establishing that defendants used plaintiffs' way of practicing dentistry in SNFs in competition with the plaintiffs.  Because plaintiffs have failed to

cite any evidence capable of establishing either the first or the second element of their misappropriation claims, defendants are entitled to summary judgment on their claims.

## C.   Defendants' Objections to and Motion to Strike Keith Walls' Affidavit and Plaintiffs' Motion to Substitute Keith Walls' Affidavit

Defendants' Objections to and Motion to Strike Keith Walls' Affidavit (Docket Entry No. 95) and Plaintiffs' Motion for Leave of Court to Substitute Affidavit of Keith Walls (Docket Entry No. 97) are both moot because the court has been able to resolve defendants' motion for summary judgment without referencing Walls' affidavit.

## III.   <u>Evidentiary Motions</u>

Pending before the court are Plaintiffs' Motion to Strike Expert Designations as Untimely (Docket Entry No. 71), Defendants' Motion to Exclude the Expert Testimony and Report of Richard J. Ostiller (Docket Entry No. 79), Plaintiffs' Motion to Exclude Expert Testimony of Jeffrey A. Compton (Docket Entry No. 81), and Plaintiffs' Motion to Exclude Expert Testimony of Jose Daniel Saenz (Docket Entry No. 82).

## A.   Plaintiffs' Motion to Strike Expert Designations as Untimely

Plaintiffs' Motion to Strike Expert Designations as Untimely (Docket Entry No. 71) seeks to strike the designation of James Taylor as a non-retained expert witness by defendants, and to

strike that portion of the testimony of Daniel Saenz intended to support defendants' affirmative defenses. Plaintiffs' motion to strike portions of the testimony of Daniel Saenz is moot because subsequent to filing the pending motion, plaintiffs filed Plaintiffs' Motion to Exclude Expert Testimony of Jose Daniel Saenz (Docket Entry No. 82), to which defendants have responded by stating that they do not oppose the relief requested.[96]

Asserting that Taylor's testimony relates to defendants' affirmative defenses, plaintiffs move the court to strike Taylor's designation as an expert witness because defendants designated him on June 24, 2016, the amended deadline for designating rebuttal expert witnesses, which was over two months after the April 22, 2016, deadline for designating experts testifying as to a claim or defense for which defendants bear the burden of proof. Plaintiffs argue that defendants' late designation of Taylor caused them prejudice by precluding them from designating their own rebuttal experts,[97] and that the court should, therefore, strike Taylor's designation as an expert. Defendants respond that Taylor's expert opinions are proper rebuttal opinions that were timely designated, that good causes exist to allow Taylor's designation, and that Taylor's late designation as an expert could not have prejudiced the plaintiffs because on July 8, 2016, the court extended the

---

[96]Defendants' Response to Plaintiffs' Motion to Exclude the Testimony of Jose Daniel Saenz, Docket Entry No. 89.

[97]Plaintiffs' Motion to Strike Expert Designations as Untimely, Docket Entry No. 71, p. 6.

deadline for the designation of rebuttal experts to August 24, 2016.[98]

Assuming without deciding that Taylor's testimony relates to defendants' affirmative defenses, and that defendants improperly designated Taylor as an expert on June 24, 2016, the date for designating rebuttal experts instead of on April 22, 2016, the date for designating experts testifying as to a claim or defense for which defendants bear the burden of proof, the court concludes that plaintiffs' motion to strike should be denied because plaintiffs have failed to establish that Taylor's late designation prejudiced them. Plaintiffs argue that defendants' late designation of Taylor precluded them from designating their own rebuttal experts, but as an explanation plaintiffs state only that they "would have to reevaluate their own expert report and incur additional costs in responding to Defendants' expert designation."[99] Because on July 8, 2016, the court extended the deadline for designation of experts from June 24, 2016, to August 24, 2016; because the only "prejudice" that plaintiffs argue they suffered due to Taylor's

---

[98]Defendants' Response to Plaintiffs' Motion to Strike Designations as Untimely, Docket Entry No. 76, pp. 7-10. See Memorandum Opinion and Order, Docket Entry No. 67, p. 31 (extending deadline for designation of rebuttal expert witnesses).

[99]Plaintiffs' Motion to Strike Expert Designations as Untimely, Docket Entry No. 71, p. 6. See also Plaintiffs' Reply in Support of Motion to Strike Expert Designations as Untimely, Docket Entry No. 78, p. 7 (restating that they "are prejudiced insofar as they must reevaluate their own expert report and incur additional costs in responding to Defendants' expert designations").

late designation, i.e., the need to reevaluate their own expert report and incur additional costs in responding to defendant's expert designation, is not prejudice but simply work that plaintiffs need to do to designate an expert to rebut Taylor; because plaintiffs have not argued that the extension of the deadline for designating experts was not sufficient; and because a trial date has yet to be set, the court is not persuaded that Taylor's late designation prejudiced the plaintiffs. Accordingly, the court concludes that plaintiff's motion to strike Taylor's expert designation should be denied. See Continental Casualty Co. v. St. Paul Fire & Marine Insurance Co., Civil Action No. 3:04-cv-1866-D, 2006 WL 2506957, *1 (N.D. Tex. August 15, 2006) (holding that "defendant should have designated the expert based on his opinions concerning the affirmative defense of comparative fault, but that the prejudice to plaintiff and intervenor can be cured by allowing them to designate rebuttal experts on this affirmative defense and continuing the trial of the case . . .").

**B.   Motions to Exclude Expert Testimony**

Plaintiffs' Motion to Exclude Expert Testimony of Jose Daniel Saenz (Docket Entry No. 82) will be granted since defendants have filed a response stating that they "do not oppose the relief requested."[100]

---

[100]Defendants' Response to Plaintiffs' Motion to Exclude the Testimony of Jose Daniel Saenz, Docket Entry No. 89.

Also pending before the court are Defendants' Motion to Exclude the Expert Testimony and Report of Richard J. Ostiller (Docket Entry No. 79), to which plaintiffs have responded by filing Plaintiffs' Response in Opposition to Defendants' Motion to Exclude Expert Testimony and Report of Richard J. Ostiller (Docket Entry No. 87), and Plaintiffs' Motion to Exclude Expert Testimony of Jeffrey A. Compton (Docket Entry No. 81), to which defendants have responded by filing Defendants' Response to Plaintiffs' Motion to Exclude the Testimony of Jeffrey A. Compton (Docket Entry No. 91). Having carefully considered the motions and the responses thereto, the court is not persuaded that either motion should be granted. The court will listen to these experts' testimony at trial; and if the court concludes that the expert is not qualified to give an opinion or that his opinion is not supported by the evidence, the court will sustain an appropriate objection.

## IV. <u>Conclusions and Order</u>

For the reasons stated in § II.B, above, defendants are entitled to summary judgment on the claims for breach of contract asserted by MAH and MAPG, on the claims for tortious interference with existing contracts asserted by MAH and MAPG, and on the claims asserted by all the plaintiffs for tortious interference with prospective contracts, aiding and abetting breach of fiduciary duty, civil conspiracy, violations of the Lanham Act, passing off, and misappropriation, but that defendants are not entitled to summary judgment on PrevMED's claims for breach of contract

asserted against OraQuest and tortious interference with existing contracts asserted against all defendants. Accordingly, Defendants' Motion for Summary Judgment (Docket Entry No. 80) is **GRANTED IN PART and DENIED IN PART**.

For the reasons stated in § II.C, above, Defendants' Objections and Motion to Strike Keith Walls' Affidavit (Docket Entry No. 95) is **MOOT**, and Plaintiffs' Motion for Leave of Court to Substitute Affidavit of Keith Walls (Docket Entry No. 97) is **MOOT**.

For the reasons stated in § III.A, above, Plaintiffs' Motion to Strike Expert Designations as Untimely (Docket Entry No. 71) is **DENIED** with respect to James Taylor and **MOOT** with respect to Daniel Saenz.

For the reasons stated in § III.B, above, Defendants' Motion to Exclude the Expert Testimony and Report of Richard J. Ostiller (Docket Entry No. 79) is **DENIED**; Plaintiffs' Motion to Exclude Expert Testimony of Jeffrey A. Compton (Docket Entry No. 81) is **DENIED**; and Plaintiffs' Motion to Exclude Expert Testimony of Jose Daniel Saenz (Docket Entry No. 82) is **GRANTED**.[101]

---

[101]The court has allowed the parties extraordinary leeway in submitting lengthy briefs and other written materials in connection with the pending motions. As the length of this Memorandum Opinion and Order indicates, the court has expended considerable time reading these papers and performing a significant amount of independent research to be as fully informed as possible when addressing the parties' arguments. While, because of the sheer volume of information presented, it is not impossible that some arguments were overlooked, the parties should assume that failure to expressly address a particular argument in this Memorandum
(continued...)

The live claims remaining in this action are the claims that PrevMED has asserted against OraQuest, now FCL, for breach of contract, and the claims that PrevMED has asserted against all of the defendants for tortious interference with existing contracts that PrevMED had with Texas SNFs.  Since defendants have not sought summary judgment on claims that plaintiffs have asserted against all defendants for unjust enrichment, those claims are also live. Adjudication of the live claims shall proceed according to the following schedule:

- Motions in Limine shall be filed by March 10, 2017;

- Responses to Motions in Limine shall be filed by March 24, 2017;

- The Joint Pretrial Order shall be filed by April 7, 2017;

- Docket Call will be held on April 14, 2017, at 3:00 p.m.

A trial date will be set at Docket Call.  Accordingly, Plaintiffs' Motion Requesting a Trial Date (Docket Entry No. 83) is **DENIED AS MOOT**.

**SIGNED** at Houston, Texas, on this 28th day of February, 2017.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[101](...continued)
Opinion and Order reflects the court's judgment that the argument lacked sufficient merit to warrant discussion.  Accordingly, the court strongly discourages the parties from seeking reconsideration based on arguments they have previously raised or that they could have raised.